Pearce v. Bank of Mobile.

33 693<br>
98 56<br>
33 693<br>
104 296<br>
33 693<br>
142 95

## PEARCE vs. BANK OF MOBILE.

[SUMMARY PROCEEDING AGAINST BANK DEBTOR.]

1. *Proviso to statute.*—The natural and appropriate office of a proviso to a statute is to restrain or qualify some preceding matter; and it should always be confined to what precedes it, unless it clearly appears .to have been intended to apply to some other matter.

2 *Construction of act of 1852, extending charter of Bank of Mobile.*—The first proviso to the act of February 9, 1852, (Session Acts 1851–2, p. 104,) " to extend the charter of the Bank of Mobile," which limits the rate of interest to be charged by the bank on its loans and discounts to six per cent., does not apply to loans and discounts made before the commencement of the extended charter.

3. *General and special statutes.*—A special statute, conferring . on a particular bank a summary remedy for the collection of its debts, is not repealed or affected by a subsequent general law, unless the latter act clearly manifests on its face such intention.

4. *Repealing statutes.*—It is an established principle, that a subsequent statute shall not repeal a former one by implication, unless the two are so inconsistent that they cannot stand together.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS was a summary proceeding, by notice and motion, instituted by the Bank of Mobile, against George L. Pearce, and was founded on the defendant's promissory notes for $2,900, dated the 8th March, 1857, payable and negotiable at the Bank of Mobile, ninety days after date, to David Stodder, by whom it was endorsed and transferred to the said bank. The notice was issued on the 13th January, 1858, was served on the defendant on the same day, and notified him that motion for judgment would be made against him at the next ensuing term of the city court, to be held on the first Monday in February, 1858.

At the return term of the notice, the defendant moved the court to strike the cause from the docket, and also demurred to the complaint, on the following specified grounds: "1st, because the notice shows that it was not issued and served twenty days before the first Monday in February, to which it is returnable; 2d, because the legislature of Alabama has passed an act repealing the act which conferred on said plaintiff a summary remedy for the collection of its debts; and, 3d, because the action is not commenced by summons and complaint." The court overruled both the motion and the demurrer; to which rulings the defendant reserved exceptions.

The defendant then pleaded the general issue, with two special pleas, which were as follows: "2. *Actio non,* because he says, that the note declared on was discounted by the plaintiff in 1857; that said plaintiff charged at the rate of more than six per cent. per annum, to-wit, seven per cent. per annum, on said loan or discount; and that said note was not discounted in the settlement of any bad or doubtful debt or debts; all of which he is ready to verify," &c. "3. *Actio non,* because he says, that heretofore, to-wit, on the 9th February, 1852, the legislature of Alabama passed an act to extend the charter of the Mobile Bank, approved February 9, 1852, which said extended charter was accepted by said plaintiff, and is in the following words," &c. "And the defendant avers, that the note here sued on was discounted in the year 1857; that more than six per cent. per annum, to-wit,

seven per cent. was charged for the said loan or discount; and that said discount was not made in settlement of any bad or doubtful debt or debts: all of which he is ready to verify," &c. The plaintiff demurred to each of these special pleas, on the following grounds: "1st, because neither of them presents a bar to the action ; 2d, because neither of them contains an answer to the whole cause of action, while both profess to do so." The court sustained the demurrers, and the defendant excepted.

The act of 1852, referred to in the second special plea, the construction of which involves the main question in the case, is in the following words:

"An act to extend the charter of the Mobile Bank.

"SECTION 1. *Be it enacted by the senate and house of representatives of the State of Alabama, in general assembly convened,* that the powers, privileges and capacities, heretofore granted to the said Bank of Mobile, by virtue of its original act of incorporation, and all of the several acts extending the same and amendatory thereof, are hereby continued in force for the term of twenty years from the expiration of the present charter of said bank; *provided,* that the said bank shall, in no case, charge more than six per cent. per annum on its loan or discounts, except in cases of settlement made to secure bad or doubtful debts; *and provided further,* that the said bank shall receive on deposit the funds of the county or city of Mobile, and pay out the same in such amounts as may be drawn for, for which it shall receive no compensation.

"SECTION 2. *And be it further enacted,* that the commissioner and trustee is hereby authorized to arrange with said bank the amount due to it by the State; charging the said bank one hundred thousand dollars as a bonus for said extension of charter; *and provided,* that the amount due upon said bonus shall be paid in sums not less than five thousand dollars per annum."

"Approved, February 9, 1852."

This act was subsequently amended, by an act approved on the 6th February, 1858, (Session Acts 1857–8, p. 18,) which is in the following words:

"*An act* to amend an act, entitled 'An act to extend the charter of the Mobile Bank.'

"SECTION 1. *Be it enacted by the senate and house of representatives of the State of Alabama, in general assembly convened,* that the first provision of an act, entitled 'An act to extend the charter of the Mobile Bank,' approved February 9th, 1852, be, and the same is hereby, so amended as to provide that the Bank of Mobile may discount notes or bills running more than six months, and not more than nine months, at a rate not to exceed seven per cent. per annum, and notes or bills running nine months or more at a rate not exceeding eight per cent. per annum."

On the trial before the jury, as appears from the bill of exceptions, the plaintiff read in evidence the note sued on, accompanied with its protest for non-payment, and proof by the certificate of the president that it was really the property of the bank. The defendant then proved, that said note was discounted by the bank, on the 22d April, 1857, at the rate of seven per cent. per annum; and that it was not so discounted in settlement of any bad or doubtful debt; also, that the bank, prior to the discount of said note, had paid the State of Alabama one hundred thousand dollars, as a bonus for the extended charter under the said act of 1852.

"On this evidence, the court charged the jury, that if they believed the evidence, the plaintiff was entitled to recover.' The defendant excepted to this charge, and requested the court to instruct the jury, 'that if they believed from the evidence that said note was discounted by said Bank of Mobile at the rate of more than six per cent. per annum, and that it was not discounted in settlement of, or to secure a bad or doubtful debt, then the plaintiff could not recover.' The court refused this charge, and the defendant excepted."

All the rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

WM. BOYLES, for appellant.—1. The act of 1854, "to regulate the practice in the city and circuit courts of Mobile," repeals the act which gave to the bank a summary

remedy for the collection of its debts. The fifth section of the act of 1854 is general and comprehensive, applying to "all suits" instituted in either of said courts; while the twelfth section expressly repeals "all laws and parts of laws conflicting with the provisions of said act." It was competent for the legislature to take away this summary remedy, although conferred by the act of incorporation; because the act of incorporation is partly a contract, and partly a law; and while the contract may be inviolable without the assent of the bank, it cannot be doubted that the remedy conferred may be altered or modified by subsequent statute.—3 Story on Constitution, 250; 8 Sm. & Mar. 9; 10 Sm. & Mar. 599; 11 Sm. & Mar. 323; 12 Sm. & Mar. 347; 4 Gill, 221; 1 Denio, 128; 7 Humph. 84; 1 Scam. 335; 3 Pike, 285; 1 Branch, (Fla.,) 356; 6 Shep. (Me.) 109; 2 Barbour, 316; 4 ib. 295; 6 ib. 327; 10 How. (U. S.) 190; 1 ib. 317; 4 Peters, 414; 11 Peters, 257; 3 Eng. 236; 2 Doug. 338; 7 Cranch, 165; R. M. Charl. (Geo.) 324; 14 Geo. 327; 9 How. (U. S.) 172. The language of the repealing act is clear and unambiguous, and leaves no room for construction; and effect must therefore be given to its words, although it may be doubtful whether the legislature intended them to be so general in their operation.—King v. Carter, 4 Burr. 2026; Smith on Statutes, 888; 6 B. Monroe, 154; 4 McLean, 463; 2 Dana, 345; 16 Barbour, 18; 19 Ala. 742. The bank is not thus left without remedy for the collection of its debts, but is merely placed on the same footing with individuals.

2. The extended charter of 1852 was accepted by the bank. The act was passed at the instance of the bank, and its provisions are manifestly beneficial to the bank; consequently its acceptance is to be presumed.—Angell & Ames on Corporations, 52, 53; 7 Pick. 344; U. S. Bank v. Dandridge, 12 Wheaton, 71; 14 Pick. 53. The demurrer to the special pleas admits that the amended charter was accepted, and proof of the payment of the bonus under its provisions places the question of acceptance beyond controversy. The charter, when accepted, takes effect from its passage.—1 Scam. 555, and cases there cited. The acceptance cannot be partial or condi-

45

tional: the bank could not accept the part which was beneficial to it, and reject all the burdens and restrictions imposed by other parts.—7 Dow & Clarke, 267 ; 7 Bing. 21 ; 4 Barn. & Cress. 78 ; 2 Dow & Clarke, 21.

3. The extended charter of 1852 restricts the bank to six per cent. interest on its loans and discounts. This construction is evident from the language of the act itself, and from a consideration of its provisions in connection with other acts bearing on it. The provisoes contained in the first section make the grant of the extended charter conditional on their performance. A proviso to a statute is a "limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate or the other be exercised unless in the case provided."—10 Peters, 449. The two provisoes are alike in terms, and stand as conditions annexed to the grant. Both were intended to operate on the existing privileges of the bank, and there is no reason for a difference of construction as to their operation. The legislature may have had no right to restrict the rate of interest allowed to the bank by its act of incorporation, or to require it to collect and disburse the revenue of Mobile county without compensation ; but, when the bank was a petitioner before that body for an extension of its chartered privileges, the legislature had a clear right to impose restrictions, limitations and conditions, as the consideration of the favors and privileges conferred. The restrictions or conditions annexed to the grant of the amended charter are contained in the two provisoes to the first section, which stand together in the act, the one contemplating a restriction, and the other imposing a duty, as the consideration of the extraordinary privileges conferred. If any doubt could exist as to the intended present operation of the second proviso, it is removed by the third section of the act in relation to the collection and disbursement of the revenue of Mobile county, which was passed on the same day the extended charter was granted, and which expressly provides that the bank shall receive and disburse the county revenue from and after the first day of April, 1852. If the two provisoes were

not intended to have a like present operation and effect, it is strange that the terms employed in both should be the same, and so well suited to give them such an operation. Moreover, the subsequent act of 1858, amending the first proviso to the act of 1852, amounts to a legislative declaration of the meaning of that proviso, as well as a distinct admission by the bank, at whose instance it was passed, that the construction here contended for is correct.—3 How. (U. S.) 556; 2 Y. & J. 300; Smith on Statutes, 758.

4. If the meaning of these grants, provisoes and amendments, in regard to the powers and restrictions of the bank, be at all doubtful, the courts will not so construe them as to extend the powers and immunities of the bank by implication.—Sedgwick on Stat. Law, 339; 27 Penn. St. (3 Casey,) 309; 11 How. (U. S.) 81.

5. If the construction of the amended charter above contended for be correct, then the contract by which the bank obtained the note here sued on, at a greater discount than six per cent., is in violation of its charter, and consequently void.—1 B. & P. 340; 2 ib. 274; 3 Vesey, 612; 6 T. R. 723; 1 Brod. & Bing. 447; Dyer, 356; Hobart, 72; 13 Conn. 262; 2 Cowen, 679; 7 Wendell, 31; 19 John. 1; 9 Wheaton, 824; 3 B. & Ald. 1–9; 1 Buls. 38; 2 T. R. 110.

E. S. Dargan, George Goldthwaite, and John Hall, *contra.*—1. The act of 1852, "to extend the charter of the Mobile Bank," whether considered as a contract or as a statute, applies only to loans and discounts made under the new or extended charter, and does not repeal or modify any powers or privileges conferred on the bank by the old charter. If A. leases lands to B. for a term of years, with certain privileges, and afterwards renews or extends the lease before its expiration, with the proviso or condition that B. shall not enjoy some one or more of the privileges granted by the first lease; it is clear that such proviso or condition would be confined in its operation to the new lease, and could not, in the absence of express words or necessary implication, be referred to the

old lease.  So, here, the act of 1852 extends the old contract with the bank for the term of twenty years after its expiration, and annexes three conditions to the extended charter—that the bank must not charge more than six per cent. on its loans and discounts, that it must receive and pay out the revenue of the city and county of Mobile free of charge, and that it must pay a bonus to the State of $100,000 in sums of not less than $5,000 per annum. This is a new contract between the parties, the subject of which is the renewal or extension of the bank charter from 1859 for twenty years; and the conditions or stipulations of such contract cannot, on any known principle, be allowed to affect rights acquired under the old.

2.  Considered merely as a statute, the act of 1852 must receive the same construction.  A proviso to a statute naturally refers to the subject or matter which precedes it, and its appropriate office is to qualify or abridge that matter.—Rawls v. Kennedy, 23 Ala. 248.  The matter which here precedes the proviso relates solely to the powers of the bank after the expiration of the old charter: it is a grant of powers to commence at a fixed future day ; and the proviso comes in to qualify or abridge this grant. Any other construction of the act would make it operate, by implication, a partial repeal of the former statute, when no such intention is manifested by its terms, and the two acts may both stand together.—Crabbe, 356 ; 13 Amer. Digest, 595, § 34 ; George v. Skeates, 19 Ala. 742 ; White v. Johnson, 23 Miss. (1 Cush.) 68 ; The State v. Woodside, 9 Indiana, 496; Williams v. Potter, 2 Barbour, 316 ; 3 Gill, 138 ; People v. Oakland Bank, 1 Doug. 282; Planters' Bank v. The State, 6 Sm. & Mar. 628 ; Kinney v. Mallory, 3 Ala. 626 ; 5 Hill, 221 ; Ludlow v. Johnson, 3 Ham. 553 ; Sedgwick on Statutes, 123–27.

3.  If the act of 1852 applies to the contract by which the plaintiff obtained the note here sued on, it does not render the contract void, but only abates the interest on account of the usury.  There is a difference between an entire want of capacity to make a contract, and a mere restriction of the exercise of such capacity.—Grand Gulf Bank v. Archer, 8 Sm. & Mar. 151, and cases therein

referred to from 4 Sm. & Mar. and 7 Howard; also, Phil. Loan Co. v Towner, 13 Conn. 249; United States Bank v. Wagner, 9 Peters, 378. The case of Owen v. United States Bank, 2 Peters, in which this distinction was lost sight of, is, in effect, overruled in the case of Thornton v. Bank of Washington, 3 Peters, 42; and the decision was materially shaken on a second appeal, as reported in 9 Peters. See, also, 13 Sm. & Mar. 411; 3 Randolph, 136.

4. The charter of the bank conferred on it a summary remedy, by notice and motion, for the collection of its debts. That remedy was continued in force by the act of 1834, and is not affected by any general statute since enacted.

RICE, C. J.—The term of the original charter of the Bank of Mobile expired, by its own limitation, on the 1st day of January, 1839. Before its expiration, and in 1834, an act was passed by the legislature, whereby the term of the original charter, and the powers, rights, privileges and immunities thereby granted, were continued and extended, from and after the 1st day of January, 1839, until the 1st day of January, 1859, and whereby the Bank was authorized (among other things) to take and receive upon promissory notes made negotiable and payable at any bank within the city of Mobile, after six, and not having more than nine months to run, at a rate of interest not exceeding seven per centum per annum.—Clay's Digest, pp. 124–130.

In 1852, the legislature passed another act, entitled, "An act *to extend the charter* of the Mobile Bank," which is in the following words: (See foregoing statement of facts.)

The most important question in this case is, whether the act of 1852, even if accepted by the bank before 1857, deprived the bank of the right, granted to it by the charter of 1834, to discount in 1857 such a note as is here sued on, at the rate of seven per cent. per annum. The determination of that question depends entirely upon the nature and meaning of the proviso contained in the 1st section of the act of 1852.

" The proviso is generally intended *to restrain the enact-*
*ing clause, and to except something which would otherwise have*
*been within it,* or, in some measure, to modify the enacting
clause."—Wayman v. Southard, 10 Wheaton, 30. " The
natural and appropriate office of a proviso is, to restrain
or qualify some preceding matter," and the proviso should
be " *confined to what precedes,* unless it is clear that it
was intended to apply " to some other matter.—Rawls v.
Doe *ex dem.* Kennedy, 23 Ala. R. 248; Smith on Stat.
and Const. Law, § 758; Sedgwick on Stat. and Const.
Law, p. 62; Vorhees v. Bank of U. S., 10 Peters, 449.

The act of 1834, as a legislative charter to a corpora-
tion, was a contract of inviolable obligation, which could
not constitutionally be impaired by the legislature, with-
out the assent of the corporation.—Bank of the State v.
Bank of Cape Fear, 13 Iredell, 75. By that charter, the
right to discount all such notes as that here sued on, at
seven per cent. per annum, was inviolably secured to the
bank, *until the 1st day of January,* 1859, the expiration of
the charter. There is nothing in the act of 1852 which
shows an intention to require the bank to surrender, or
to consent to surrender, *before the expiration of the char-*
*ter of* 1834, any right secured by that charter. " The
powers, privileges and capacities " of the bank, which
are extended by the act of 1852, are extended "*from*
*the expiration* " of the charter of 1834, leaving that charter
wholly untouched in its duration. And the restraint
which was intended by the proviso, as to six per cent.
interest, seems to us to be clearly a restraint upon *the*
*extended* powers, privileges and capacities, and not upon
the powers, privileges and capacities, which belonged to
the bank at and before the passage of the act of 1852.
By confining, as we do, the proviso as to six per cent.
interest to what precedes it in the act of 1852, we allow it
to perform its natural and appropriate office, and to ope-
rate as a restraint upon the powers, privileges and capaci-
ties which were derived from the act of 1852, and which,
but for that act, would not have belonged to the bank.

The *special* provision in the charter, allowing the pro-
ceeding by notice and motion, for the collection of such

a debt as that here sued on, is not affected by any subsequent *general* law.—Mobile & Ohio R. R. Co. v. The State, 29 Ala. Rep. 573; Daughdrill v. The Ala. Life Ins. and Trust Co., 31 Ala. Rep. 91; May v. Robertson, 13 Ala. Rep. 86.

Upon an examination of the whole record, we find no reversible error, and therefore affirm the judgment.

NOTE BY REPORTER.—After the delivery of the foregoing opinion, the appellant's counsel filed an application for a rehearing; in response to which, on a subsequent day of the term, the following opinion was pronounced:

A. J. WALKER, C. J.—The petition for a rehearing presents in a forcible manner some arguments opposed to the affirmance of the judgment of the court below, which are not noticed in the opinion prepared by the late chief justice.

The act to extend the charter of the Bank of Mobile contains two provisoes, placed in juxtaposition, which are as follows: "*Provided*, that the said bank shall, in no case, charge more than six per cent. per annum on its loans or discounts, except in cases of settlement made to secure and doubtful debts; *and provided further*, that the said bank shall receive on deposit the funds of the county or city of Mobile, and pay out the same in such amounts as may be drawn for, for which it shall receive no compensation."—Pamphlet Acts of '51 and '52, p. 104. On the same day with the act to extend the bank charter, another act was approved, which made it the duty of the bank to receive on deposit and pay out the funds of the city and county of Mobile.—Pamphlet Acts of '51 and '52, page 470. It is clearly indicated in this latter act, that it was designed to become operative, at the farthest, on the first of April next after its adoption, and before the expiration of the old charter, or the commencement of the extended period. It is contended, that this latter statute is a cotemporaneous legislative construction of the second proviso, and clearly indicates an intent that it should have a present operation. The inference is then drawn,

that the legislature designed that the first proviso should also have a present operation, because it is supposed that the two provisoes must have a like interpretation as to that point.

We do not consider, whether the second proviso should be understood as is contended; but we are unable to attain the conclusion, that the same time for the commencement of the first proviso, as of the second, must necessarily be adopted. There are reasons, opposed to the allowance of an immediate operation to the first proviso, which can not apply to the second. The restriction of the bank to six per cent. on its loans and discounts is, in its nature, a qualification of the powers previously conferred. The extension "of the powers, privileges and capacities" of the corporation, bestowed the privilege of making loans and discounts; and the proviso, immediately following, would seem naturally to qualify that privilege. It is different, in that respect, from the proviso in reference to the gratuitous receiving on deposit and paying out the money of the city and county of Mobile. That proviso is not of such a nature as to qualify any of the acts which the bank is authorized to perform. It does not, like the first proviso, pertain to the manner in which any of the granted privileges are to be exercised. It rather imposes a burden, as a part of the price in consideration of which the extension of the period of the franchise was granted. There is nothing in its nature which interferes with the allowance to it of a present operation.

These two provisoes differ from each other in another essential particular. The second proviso could have immediate effect, without the abrogation or repeal of any clause of the previous acts chartering and extending the charter of the bank. The first proviso could not operate before the extended period of the franchise, without a repeal of the clause in the charter prescribing the rate of interest. To give the first proviso immediate effect, it must not only be regarded as qualifying the privileges granted by the act, but as repealing a pre-existing law. Regarded in that light, the first proviso would have an

operation not authorized by its language, and certainly not justified by the authorities which define the scope and effect of a proviso, several of which are collected in our former opinion in this case. It is an established principle, that a later statute shall not repeal an older one by implication, unless they are so inconsistent that they can not stand together.—Rawls v. Kennedy, 23 Ala. 240; George v. Skeates, 19 Ala. 738. The proviso now under consideration is not so inconsistent with the previous act, prescribing to the bank the rate of interest to be charged, that the two can not stand together. On the contrary, a perfect harmony between the two is preserved, by giving the former effect upon the expiration of the period appointed for the operation of the latter. We think it follows from what we have said, that the giving of immediate operation to the first proviso would involve the repeal by implication of a previous statute, while no such consequence would attend the allowance of an immediate operation to the second proviso.

For the reasons above set forth, even it be conceded that we have a legislative construction of the second proviso, which gives it a present force, we should not deem it our duty to place the same construction upon the first proviso.

On the 6th February, 1858, an act was passed, amending the first proviso, and modifying the restriction as to the rate of interest. We do not find in this act any evidence that the legislature regarded the first proviso to the act extending the charter of the bank as having any operation before the commencement of the period of extension. The language and the purpose of the act consist as well with the supposition that the proviso did not have, as that it did have a present operation.

The petition for a rehearing is overruled.