75   103
e142   95

# Roberts *v.* Pippen.

*Action against Judge of Probate for Penalty for issuing Marriage License to Minor in Violation of Provisions of the Statute.*

1. *Repeal of statutes by implication not favored.*—The repeal of statutes by implication is not favored; and, ordinarily, the courts will not declare a prior statute to have been repealed by a subsequent one, in the absence of express words, unless the provisions of the two are directly repugnant.

2. *When statute not repealed by implication.*—The act of March 1st,

[Roberts v. Pippen.]

1881 (Pamph. Acts, 1880-1, p. 31), amending section 2681 of the Code of 1876, which prescribes a penalty against probate judges for issuing marriage licenses to minors in certain cases, after providing that nothing contained in the act should "affect the liability of probate judges incurred for the issuance of licenses" prior to the passage of the act, repeals the section as it then stood. This act was itself amended by the act of February 5th, 1883 (Pamph. Acts, 1882-3, p. 38), the provisions of which are expressly made to apply to "all suits that hereafter may be brought, or which are now pending under section 2681 of the Code, as amended" thereby, or by the act of March 1st, 1881; and which repeals "all laws and parts of laws in conflict with the provisions of this act." *Held*, that the act of February 5th, 1883, did not repeal the saving clause of the act of March 1st, 1881, or affect a suit brought under section 2681, as it originally stood, and pending on 1st March, 1881.

3.  *When averment in complaint mere descriptio ponsonæ.*—Where, in an action against a judge of probate for issuing a marriage license to a minor, etc., under section 2681, as it originally stood, the complainant describes the minor to whom the license was issued by her name, and the further designation, that she is the plaintiff's daughter, the latter words are merely *descriptio personæ*, which it is not necessary to prove, the original statute authorizing a recovery of the penalty by any person who elected to sue for it.

4.  *Falsus in uno, falsus in omnibus ; when maxim has no application.* The maxim, *Falsus in uno, falsus in omnibus*, has no application to cases in which a false statement is inadvertently, and not willfully made by a witness.

APPEAL from Greene Circuit Court.

Tried before Hon WM. S. MUDD.

This was an action by Phil. Pippen, suing on his own behalf, and on behalf of the State of Alabama, against Thomas W. Roberts, in which the plaintiff sought to recover of the defendant the sum of five hundred dollars, the penalty provided by section 2681 of the Code of 1876, for his issuing, as judge of probate, to Fanny Pippen, "daughter of said plaintiff, Phil. Pippen, an infant under the age of eighteen years," etc., "a marriage license for the celebration of the rites of matrimony" between the said Fanny and one Cary Foster, contrary to the provisions of the statute. The suit was commenced on 27th January, 1881, and was tried at the fall term, 1882, of said court, the trial resulting in a verdict and judgment for the plaintiff.

The plaintiff, after proving the issue of the license by the defendant as judge of probate, and the marriage of the parties in pursuance thereof, was examined as a witness in his own behalf, and testified, in substance, that over thirty years ago he was married to Julia Pippen, when they both were slaves, and from the day of their marriage to the time of the trial they had lived together as man and wife; that the said Fanny was his daughter, and when she married she was in her sixteenth year; and that he was not present when the license was issued, and knew nothing about it. On cross-examination, the plaintiff testified, among other things, that his daughter Fanny was

born "since he was freed, or since freedom;" that his daughter "next to Fanny" was then going on sixteen years of age, and she was also "born since feedom;" and that he could not tell what year he was emancipated. Another witness for the plaintiff testified that the said Fanny was born in August, 1863, and was in her sixteenth year when she was married.

The defendant was examined as a witness in his own behalf, to whom his counsel propounded the following questions, to each of which the plaintiff separately objected, his objections were sustained, and exceptions were duly reserved by the defendant, to-wit: (1) Whether, at the time he issued said marriage license, Cary Foster made any statements to him as to the age of Fanny Pippen; (2) whether, at the time of, and before witness issued said license, Cary Foster and one Morris made an affidavit that said Fanny was over the age of eighteen years; (3) whether Phil. Pippen, after the issue of said license, and after the marriage, did not admit to him that he had given his consent to said marriage; (4) whether, after the license was issued, and after the marriage, Phil. Pippen did not give his consent to said marriage, and ratified it; and (5) whether, at the date of the issue of the license, in his judgment, the said Fanny was eighteen years of age. The defendant testified that he knew the said Fanny before the license was issued, and that "she was then as large as she is now." The defendant offered to prove by another witness, that after the license was issued, and the marriage was consummated, the plaintiff signed a paper writing, in these words: "I consent to the marriage of my daughter Fanny to Cary Foster, and request that a license issue for that purpose;" and consented that the paper should be antedated, and made to read as of the 28th May, 1880; and that said paper had been, after it was signed by the plaintiff, filed in the office of the judge of probate, by the plaintiff's consent, with the bond that Cary Foster had made when the marriage license was procured. To this proof the plaintiff objected, his objection was sustained, and the defendant excepted. The plaintiff offered other evidence tending to show that the said Fanny was his daughter; and the defendant offered testimony "tending to show that said Fanny, from her appearance and developments, was, at the date of the issuance of said license, eighteen years of age."

As recited in the bill of exceptions, "at the close of the testimony on the part of the defendant, Fanny, the person mentioned in plaintiff's complaint, was called to the witness stand by defendant's counsel, but no question was asked her by them; but they stated that they simply wished to make profert of said Fanny, that the jury might see the difference in color between said Fanny and the said Phillip Pippen, and have them to de-

termine whether said Phillip was in truth and in fact the father of said child. Phillip Pippin had been on the stand as a witness for himself, and he was a black man, and had the appearance of a full-blooded negro. Fanny was of a lighter complexion, her color being that of a brown or dark-colored mulatto. There was no evidence of the color of Julia, the mother of said Fanny."

The foregoing being the substance of the material facts disclosed by the evidence, the defendant requested the court in writing to give the following charges: (1) "During the existence of slavery in Alabama, slaves were incapable of contracting valid marriages, and since the abolition of that institution, although connubial relations between slaves, existing at the time of emancipation, were declared valid marriages by ordinances and legislative acts, enacted after the time of emancipation, nevertheless, it is only the actual issue of such marriages which is legitimatized; and, therefore, unless the jury believe from the evidence that Fanny Pippen was begotten by Phil. Pippin, there is a variance between the allegations and the proof, and they must find for the defendant." (2) "If the jury, from the evidence, believe that Phil. Pippen swore falsely when he said that Fanny was born after he was freed, or freedom took place, then the jury can look to that fact in weighing the testimony of Phil. Pippin, and may, if they see proper, disregard his testimony." These charges the court refused, and the defendant duly excepted.

The rulings above noted are here assigned as error.

Thos. Seay and J. P. McQueen, for appellant.

H. C. Tompkins and Thos. W. Coleman, contra.

SOMERVILLE, J.—The present is a *qui tam* action against the probate judge of Greene county for issuing a license to marry to *a minor*, in violation of the provisions of the statute. Code, 1876, § 2678. The action was brought on the twenty-seventh of January, 1881, under section 2681 of the Code, which reads as follows:

"A judge of probate issuing a license to marry contrary to the provisions of this article, forfeits five hundred dollars, one-half to the State, and the other half to the use of *any person who may sue* for the same."

This section was amended by the act approved March 1, 1881, entitled "An act to amend section 2681 of the Code," found on page 31 of the Session Acts of 1880–81. This amendment authorized the jury to excuse or justify the issuance of the license so as to defeat the forfeiture, if the minor applying for

it made affidavit of his or her having obtained the requisite age, and presented at the same time such a personal appearance as would reasonably justify such a conclusion.    After further declaring that *nothing contained in the act should " affect the liability of probate judges incurred for the issuance of licenses " before the passage of the act*, section 2681, as it stood in the Code at that time, was expressly repealed.

On February 5th, 1883, the above act of March, 1881, was itself amended in several particulars.—Acts 1882–83, pp. 38–9. The penalty was reduced to two hundred dollars, and the right to sue conferred on the parent or guardian for the use of the ward.    Omitting mention of other changes immaterial to the question under consideration, we designate the following sections of the last amended act as of most importance in their bearing :

" Sec. 2.    *Be it further enacted*, That in all suits that hereafter may be brought, or which are now pending under section 2681 of the Code, *as amended* by an act entitled ' An act to amend section 2681 of the Code,' approved March 1, 1881, or as amended by this act, where it appears that the parent or guardian consented to the marriage, this shall be a defense to said suit.

" Sec. 3.    *Be it further enacted*, That all laws and parts of laws *in conflict with the provisions of this act*, be and they are hereby repealed."

The question presented for decision is, whether suits brought under section 2681 of the Code, *as it originally stood*, and which are specially exempted from the operation of the first amendatory act of March 1, 1881, are affected by the last act of February, 1883.    It is contended by appellant's counsel that the *saving clause*, preserving the rights of litigants as to such suits, is repealed by the act of 1883, and that the plaintiff's right of action, in the present case, to the statutory penalty is thus destroyed.

Without admitting that the principle invoked, which forbids the enforcement of a mere statutory penalty after repeal of the statute conferring the right to the penalty, has any application after the right has been reduced to judgment, as was done in this case before the passage of the act of February, 1883, we are of opinion there has been no repeal of the saving clause in the act of March, 1881, which reserved rights of action then already accrued under section 2681 of the Code of 1876.

It is not insisted that the repeal is express, but only by implication.    The rule is settled that the repeal of statutes by implication is not favored by the law.    In order to harmonize legislative acts, courts are required to adopt, if necessary, rules of fair and liberal construction.    If it be possible to reconcile

the two statutes so as to permit both to stand, without violating sound principles of construction, this will be done. The court will not ordinarily declare a prior act to be repealed by a subsequent one, in the absence of express words of repeal, unless the provisions of the two are directly repugnant, or, as frequently expressed, irreconcilably inconsistent.—*Pearce v. Bank of Mobile*, 33 Ala. 693; *George v. Skeates*, 19 Ala. 738; 2 Brick. Dig. p. 463, §§ 44, 45; Sedgwick's Stat. and Const. Law (2nd Ed.), 98.

We can see no necessary repugnancy between the provisions of the act of 1883, and the *saving clause* in the act of 1881, under consideration. The legislative intention to preserve all rights of action which had accrued, before the passage of the latter act, under section 2681 of the Code of 1876, is very clearly expressed in the act of 1881.—Acts 1880–81, p. 31. It is not insisted that any repeal is affected by section 2 of the act of 1883, which only permits, as a defense, the fact of the parents' or guardians' *consent* to the marriage, in two classes of cases, (1) Such as might be brought under the act of 1883, and (2) such as had been brought under the act of 1881, or, more specifically, under section 2681 of the Code *as amended* by that act. No allusion is made to suits brought under this section of the Code, as *it originally stood before amendment*, and the present suit is of that class, being expressly preserved by the saving clause in question. "The effect of a reservation, or saving, in the repeal of a penal statute," as observed by Ormond, J., in *Pope v. Lewis*, 4 Ala. 492, "as to suits commenced under it, *is to continue the statute in force quoad such suits.*"

. The particular contention here made by counsel is, that a repeal of this clause was effected by section 3 of the act of 1883, which declares that all laws and parts of laws, *in conflict* with the provisions of this last act, "be and they are hereby repealed." It is obvious, however, upon careful consideration, that there is no necessary conflict between the scope of this act and the operation of this saving clause. The act of 1883 does not purport to make any provision for suits instituted under section 2681 of the Code, as it originally stood before amendment. It purports only to affect suits brought under the act of 1881, and such as might afterwards be brought under the act of February 5th, 1883. It nowhere encroaches upon the field of operation reserved by the saving clause. It says nothing about suits brought under section 2681 of the Code. There can therefore be no repugnancy between the provisions of the last act and the saving clause. There is full scope for the operation of the two without any conflict.

It is apparent, without argument, that the various exceptions to the rulings of the court on the evidence were taken upon

[Lowery v. Peterson.]

the theory that the present action was modified by the act of March 1, 1881. In view of the conclusion which we have reached above, that all suits brought under section 2681 of the Code, as it originally stood, are entirely unaffected by either of the amendatory acts of 1881, or of 1883, the assignments based on these exceptions must be overruled. The statement of the defendant Roberts as to the age of the minor, Fanny, must be construed as the averment of a mere *opinion* based upon the personal appearance of the girl, and not of a *fact* based upon his knowledge of her age.

The first charge requested by the defendant was properly refused. The designation of the minor in the complaint as *the daughter* of the plaintiff was a mere *descriptio personœ,* fully sustained and nowhere contradicted by the evidence ; but it was entirely immaterial to authorize a recovery, both in point of allegation and of proof. The maxim, *Falsa demonstratio non nocet,* applies here, and authorizes the rejection as surplusage of "any false description that is not vital to the object of controversy.—1 Whart. Ev. § 412. The penalty under the new statute is given to the parent, or guardian, but under the law governing the present action it was given to any person who elected to sue for it.—Code, 1876, § 2681.

Nor can we see any error in the refusal of the last charge requested by the defendant. It is an attempt to improperly apply the maxim, *Falsus in uno, falsus in omnibus,* which has no application to cases where a false statement is *inadvertently* and *not willfully* made by a party, or other witness. Such falsehood should not only be corruptly asserted, but should go to "the core of the witness' testimony," before a jury is authorized to reject his entire statement as unworthy of credit on the principle intended to be embodied in this maxim. 1 Whart. Ev. § 412, *note* 2, and cases cited. The charge in question was clearly erroneous when tested by these principles.

The judgment is affirmed.