### *MARTIN BROWN v. VILLAGE OF VAN WERT.

**1. KEEPING A ROOM.**

     A charge in an affidavit that a person kept a room wherein intoxicating **liquors are** sold, contrary to and in violation of, the provisions of an ordinance, is not **the** statement of a legal conclusion, but the statement of a fact. It is not necessary to aver a series of sales or other facts constituting the keeping of such a room.

---

* This judgment was reversed by the supreme court. See opinion, 47 O. S., 477.

**2.** LOCAL OPTION CLAUSE NOT IMPLIEDLY REPEALED.

Section 1692, Rev. Stat., as amended March 27, 1889, does not repeal by implication the local option clause of the Dow law.

**3.** Dow LIQUOR TAX HELD TO BE INVALID.

Section 11 of the statute, known as the Dow law, is invalid and void, for the following reasons:

1. State policy permits a party to engage in and conduct an ale, beer, or porter house.
2. This right or policy can be defeated by the passage of a prohibitory ordinance, and the return of a proportionate share of the tax paid.
3. The legislature has failed to provide from what source the tax to be returned shall be paid, or by whom it shall be paid.

ERROR to the Court of Common Pleas of Van Wert county.

SENEY, J.

On the 6th day of March, A. D. 1889, the Village of Van Wert passed an ordinance under the Dow liquor law to prohibit ale, beer and porter houses within said village.

On the 12th day of June, 1889, upon the complaint of or by David C. Farmer, the plaintiff in error was arrested and brought before the mayor of the village to answer to a charge of violating said ordinance.

The plaintiff in error filed a motion asking to be discharged from arrest, on the following grounds:

First—That the complaint was insufficient and defective.

Second—That so much of the Dow law as purports to confer upon municipal corporations the power to pass ordinances, such as the one in question, is unconstitutional, illegal and void; and hence that the ordinance in question is unconstitutional, illegal and void.

The mayor overruled the motion, and the plaintiff in error excepted. Upon being arraigned the plaintiff in error plead guilty. He then filed a motion in arrest of judgment for the following reasons:

First—That the court erred in overruling his motion to be discharged from arrest.

Second—That the affidavit was insufficient.

The court overruled the motion in arrest of judgment, and sentenced the plaintiff in error to pay a fine of $50.00 and the costs of prosecution; and to stand committed until said fine and costs were paid. Execution of said sentence was suspended to give the plaintiff in error an opportunity to file petition in error in the court of common pleas. Upon leave granted, the plaintiff in error filed his petition in error in the court of common pleas to reverse the judgment of the mayor. The court of common pleas affirmed the judgment of the mayor, to reverse which the plaintiff in error has filed his petition in error in this court.

The ordinance upon which the prosecution was had, is brought into the record by a bill of exceptions in one or more of cases, and by being copied into the motions for discharge from arrest in the other cases.

The ordinance reads as follows:

### "AN ORDINANCE

"To prohibit ale, beer and porter houses and other places where intoxicating liquors are "sold at retail in the Village of Van Wert, Ohio.

"Section 1. Be it ordained by the council of the village of Van Wert, Ohio, that it shall be unlawful for any person or persons to open, establish or keep within the limits of said village any shop, rooms, booth, arbor or other place wherein ale, beer, porter, or any other intoxicating liquors are sold at retail, for any purpose or in any quantity otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes; but this section shall be not so construed as to apply to the manufacture of intoxicating liquors from the raw material and the sale thereof at the manufactory by the manufacturer of the same in quantities of one gallon or more at any one time.

"Section 2. Any person or persons violating the provisions of this ordinance shall, upon conviction thereof for the first offense, be fined not less than $25.00, nor more than $50.00, and for each repetition of said offense such person or persons shall be fined not less than $50.00, nor more than $100.00, and in each case the party so convicted shall pay the costs of his prosecution, and shall stand committed until such fine and costs are paid, or secured to be paid within thirty days.

"Section 3. This ordinance shall take effect and be in force from and after ten days from its legal publication.

"Passed March 6th, 1889."

The complaint reads as follows:

"David C. Farmer, who being by me first duly sworn in accordance with law, deposeth and saith: That on the first day of April, A. D. 1889, and from that day continuously until the 19th day of August, A. D. 1889, at and within the village of Van Wert, in the county of Van Wert and state of Ohio, one Martin Brown, did then and there, during all of the time aforesaid at, and within the said village of Van Wert, unlawfully and knowingly keep a certain room there situated, wherein intoxicating liquors were and have been then and there sold at retail otherwise than upon prescriptions issued in good faith by reputable physicians in active practice, otherwise than for exclusively known mechanical purposes, otherwise than for exclusively known pharmaceutical purposes, and otherwise than for exclusively known sacramental purposes. Said intoxicating liquors then and there sold as aforesaid, not being then and there sold in quantities of one gallon or more at any one time at the place where manufactured by the manufacturer thereof from the raw material, contrary to and in violation of an ordinance, entitled 'An ordinance to prohibit ale, beer and porter houses, and other places wherein intoxicating liquors are sold at retail in the village of Van Wert, Ohio, and passed by the council of the said village of Van Wert, March 8, A. D. 1889.' "

It is claimed by counsel for plaintiff in error, that the statement that between certain days the plaintiff in error unlawfully kept a room wherein intoxicating liquors were sold at retail, contrary to and in violation of the provisions of the ordinance above recited, is a statement of a legal conclusion merely, and not a statement of fact; that the complaint should state the facts which constitute the keeping of such room, and not that the plaintiff in error kept such a room.

The complaint follows the language of the ordinance, and when it states that the plaintiff in error kept a room, it states a fact, and not a legal conclusion. The claim of counsel is that to constitute the keeping of such a room, a series of unlawful sales must be made by the person against whom the complaint is made, and that the making of such series of sales must be set out. Section 7135, Rev. Stat., reads as follows: "The following form of affidavit shall be sufficient in criminal proceedings before justices of the peace or mayors under sections sixty-nine hundred and forty-one, sixty-nine hundred and forty-two, sixty-nine hundred and forty-three, sixty-nine hundred and forty-four, sixty-nine hundred and forty-five, sixty-nine hundred and forty-six, sixty-nine hundred and forty-seven and sixty-nine hundred and forty-eight inclusive, when applicable, but may be varied to suit the nature of the case, namely:

"State of Ohio, ———— County, ss:

"Before me, A. B., a justice of the peace for said county (or mayor of and etc., as the case may be) personally came C. D., who being duly sworn according to law, deposeth and saith, that on or about the — day of ——, in the year ——, at the county aforesaid, E. F. did sell intoxicating liquors to one G. H., to be drank in the place where sold, (or to G. H., a minor, etc., or a person intoxicated or in the habit of getting intoxicated, as the case may be), or is a keeper of a room or tavern (as the case may be), where intoxicating liquors are sold in violation of law. And further saith not.

"Signed C. D.

"Sworn to and subscribed before me, this — day of ———— A. D.

"A. B., Justice, or Mayor."

It is a sufficient answer to the claim of counsel that the complaint in each case substantially follows the requirements of the above named section of the statute.

The next claim made by counsel is, that the local option portion of the Dow law was repealed by an act of the legislature passed March 27, 1889, and hence the village council had no authority to pass the ordinance in question.

Clause 5, of sec. 1692, Rev. Stat., as revised 1881, confers authority upon municipal corporations, "to regulate ale, beer and porter houses and shops." Counsel claim that the power to regulate does not include the power to restrain or prohibit.

Section 11, of the Dow law confers power upon municipal corporations "to regulate and prohibit ale, beer and porter houses and shops."

The act of March 27, 1889, is an act entitled "an act to amend sec. 1692, Rev. Stat. of Ohio, as amended April 20, 1881."

The section, as amended, repealed original sec. 1692. No change is made in clause 5 of the amended section, but the original section is otherwise materially changed.

No mention is made in the amended section of an amendment or repeal of any portion of the Dow law.

Counsel claim, however, that sec. 1692, as amended by the act of March 27, 1889, is inconsistent with the local option provisions of the Dow law, and hence, by implication, that portion of the Dow law is repealed.

The fact that the language of clause 5 of original 1692, is not changed, and that the section is otherwise materially changed and amended, shows that the legislature did not intend to change or amend clause 5, but did intend to otherwise amend said section.

. Section 16, art. 2, of the constitution reads as follows: "Section 16. Every bill shall be fully and distinctly read on three different days, unless in case of urgency, three-fourths of the members of the house in which it shall be pending, shall dispense with the rule. (1) No bill shall contain more than one subject, which shall be clearly expressed in its title; (2), and no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended; (3), and the section or sections so amended shall be repealed."

We have a right to presume that the legislature would not knowingly and willfully disregard this provision of the constitution, and hence in amending section 1692 did not intend to repeal the local option portion of the Dow law. We do not claim that a prior statute may not be repealed by implication, by a subsequent statute; but repeals by implication are not favored. It is only in cases where the provisions of the subsequent statute are so repugnant to, and inconsistent with, the provisions of the prior statute, that the two can not stand together, that a repeal by implication will be admitted.

Upon this subject we quote the following from Sedgwick on the Construction of Statutory and Constitutional Law: "In regard to the mode in which laws may be repealed by subsequent legislation, it is laid down as a rule that a general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent; citing Dwarris on Statutes, 6 Co. 196, 21 Penn., 37, 426. As for instance, the statute, 4 and 5 Philip and Mary, c. 5, declaring that no weaver shall use, etc." The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all.

So where an act of parliament had authorized individuals to inclose and embank portions of the soil under the river Thames, and had declared that such land should be "free from all taxes and assessments whatsoever." The land tax act subsequently passed, by general words, embraced all the lands in the kingdom; and the question came before the King's Bench, whether the land mentioned in the former act had been legally taxed; and it was held that the tax was illegal. Lord Kenyon said: "It can not be contended that a subsequent act of parliament will not control the provisions of a prior statute if it were intended to have the operation; but there are several cases in the books to show that where the intention of the legislature was apparent that the subsequent act should not have such an operation, then, even though the words of such statute, taken strictly and grammatically, would repeal the former act, the courts of law, judging for the benefit of the subject, have held that they ought not to receive such a construction."

It has been said, that even if there be negative words in the latter statute, it shall not be considered as a repeal of the former, provided they can both reasonably stand together. So it was held that the statute 1 and 2 Philip and Mary, c. 10, declaring that all trials for treason should be according to the course of the common law, and not otherwise, did not work a repeal of the statute, 35 Henry VIII., c. 2, which authorized trial for treason beyond the sea.

But, on the other hand, it is equally well settled that a subsequent statute which is clearly repugnant to a prior one, necessarily repeals the former one, although it does not do so in terms; and even if the statute be not repugnant, in all its provisions, to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the cases provided for, it repeals the original act. *Leges posteriores. priores contrarius abrogant.* .

But though it is thus clearly settled that statutes may be repealed by implication, and without any express words, still the leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of legislature together. "It must be known," says Lord Coke, "that for as much as acts of parliament are established with such gravity, wisdom and universal consent of the whole realm, for the advancement of the commonwealth, they ought not, by any constrained construction out of the general and ambiguous words of a subsequent act, to be abrogated; *sed hujus modi statuta tanta solemnitate et prudentia edita* (as Fortescue speaks, cap. 18, vol. 21), ought to be maintained and supported with a benign and favorable construction."

So, in this country, on the same principle, it has been said that laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is therefore but reasonable to conclude that the legislature, in passing

a statute, did not intend to interfere with, or abrogate, any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence, a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together. 5 Hill, 221; 4 Gill & Johnston.

So, in Pennsylvania, it has been decided that repeals by implication are not favored, and it has been declared that one act of assembly is held to repeal another by implication only in cases of very strong repugnancy, or irreconcilable inconsistency. 6 W. & S., 209; 10 Barr, 452; 21 Penn., 37.

So, again, in a recent case in New York, it is said that the repeal of a statute by implication is not favored. Unless the later statute is manifestly inconsistent with, and repugnant to, the former, both remain in force. Courts are bound to uphold the prior law, if the two may subsist together. 2 Barb., 316.

So, too, in Massachusetts, to annul the prior statute, the later act must be clearly repugnant to the former, and the implication by repeal will not be favored. Where an act was passed in 1836 prohibiting the sale of "spirituous" liquors, and in 1850 an act was passed proposing to amend the prior statute by inserting the word "intoxicating" in the place of the word "spirituous," it was argued that the act of 1850 repealed that of 1836; but on the ground that the word "intoxicating," includes a larger class of cases than "spirituous;" that all spirituous liquors are intoxicating, but all intoxicating liquors are not spirituous, it was held that they might well stand together. 6 Cush., 465.

Our own supreme court, in the case of Fosdick v. Perrysburg, 14 O. S., 472, say: "A subsequent statute treating a subject in general terms, and not expressly contradicting the provisions of the prior one, shall not be considered as intended to affect the particular and positive provisions of the prior act, unless it be absolutely necessary to do so in order to give its words any meaning.". In the case of State v. Newton, 26 O. S., 206, the case of Fosdick v. Perrysburg is approved, and the court say: "The same principle in various forms has been often recognized," and cite the clause from Sedgwick, quoted above. 11 Ia., 552; 33 Ala., 693.

In support of the foregoing, we cite Ohio v. Dudley, 1 O. S., 441; Bloom v. Richards, 2 O. S., 387, 399; Cass v. Dillon, 2 O. S., 607; Raudebaugh v. Shelley, 6 O. S., 307; State v. Comrs., 8 O. S., 131; Buckingham v. Railroad Co., 10 O. S., 25, 178; State v. Roosa, 11 O. S., 27; Stone v. Elliott, 11 O. S., 258; State v. Com'rs., 30 O. S., 421; Robbins v. State, 20 Wall., 251. Without reading them, we confidently assert that the principle above referred to against repeals by implication, is supported by an unbroken line of authorities in all the states of the union. the federal courts and the English courts also.

In the light of all these authorities we hold that the local option provisions of the Dow law were not repealed by the act of March 27, 1889, amending sec. 1692, Rev. Stat., for the two acts are not irreconcilable, but both can be enforced; council can regulate under both, and restrain or prohibit under the Dow law. If the enforcement of both was required at the same time they might be inconsistent, but council can choose to enforce but one.

The remaining question made in argument is: Is what is known as the Dow law constitutional? This has been disposed of by the supreme court in the case of Adler v. Whitbeck, 44 O. S., 539, and Anderson v. Brewster, 44 O. S., 576, in both of which the court held the law constitutional. Comment is unnecessary, further than to add that if it were an original question, that the opinion we hold would be radically different from that held by the supreme court in the cases cited.

We think a further question arises in each of the cases, viz.: (Notwithstanding, the supreme court has held what is known as the Dow law constitutional) is the local option feature of said law a valid enactment?

## THE DOW LAW.

Section 1 of the Dow law, as amended March 26, 1888, provides for an assessment in the sum of $250.00 upon the place of business of any person trafficking in intoxicating liquors.

Section 2 (original act) creates a   en upon the real property where the business is carried on for this assessment, of date the fourth Monday of May, and further provides for its payment, one-half on or before June 20th, and one-half on or before December 20th.

Section 3 (amended act) provides for a person that commences business after the fourth Monday in May, and further provides, "That any person who has paid or is charged upon the tax duplicate with the full amount of said assessment, discontinue such business, the county auditor, upon being satisfied of that fact, shall issue to such person a refunding order for a proportionate amount of said assessment, except, that it shall be in no case less than $50.00."

Section 4 (original act) provides for the collection of the assessment if not paid.

Section 5 (amended act) provides that the assessor shall make return to the county auditor as to every place where such business is conducted, etc.

Section 6 (original act) provides for the making out of the duplicate of such places so returned, and the assessments thereon, which shall be delivered (a copy) by the first Monday in June to treasurer of the county, who shall be chargeable therewith.

Section 7 (original act) provides for the collection of the assessments by the treasurer.

Section 9 (amended act) provides for the distribution of the revenue and fines resulting from the act as follows:

Two-tenths to the general revenues of the state.

Six-tenths to the treasury of the municipal corporation, which sum shall be credited, one-half to the credit of the police fund, and one-half to the credit of the general revenue fund.

Two-tenths to the credit of the poor fund of the county, etc.

For some time prior to the passage of what is known as the Dow law, it was made by state law unlawful to conduct an ale, beer or porter house, or what is more commonly known a saloon; for the statute provides, "that it should be unlawful to sell intoxicating liquors, to be drank in or upon or about the building, or premises where sold, etc."

The same statute that brought what is known as the Dow law, also repealed the statute cited. That had been the law of the state for years. In other words, where the law of the state had made the running of a saloon unlawful, the Dow law made it legal. So that it is perfectly clear that the policy of the state as expressed by its legislature, is to permit the running of saloons, subject, however, to certain restrictions. Within these restrictions. by the payment of the assessment of $250.00, the party engaged in the business as well as the business is protected. That is, so far as state legislation is concerned. Hence, it follows that by the payment of this assessment, under state policy, a right, privilege or what you may call it, is secured to the party engaged in this business.

Can this right be taken away?

Yes. How? By section 11 of the Dow law, which provides, "And any municipal corporation shall have full power to regulate, restrain and prohibit ale, beer or porter houses, and other places where intoxicating liquors are sold at retail, for any purpose, or in any quantities other than as provided for in sec. 8 of this act. But if any municipal corporation shall prohibit ale, beer or porter houses, or other places where intoxicating liquors are sold, within the limits of such corporation, a ratable proportion of the tax paid by the proprietors thereof, for the unexpired portion of the year, shall be returned to such proprietors."

This is a delegated power to divest a right established under state policy, and must strictly be construed. It will be noticed that the power to prohibit is coupled with the right of the party to have a proportion of the tax he has paid returned. The question now arises, from what source is the party to get the tax returned, and who is to pay it? The statute is silent. Can it be construed that the municipal corporation is to return it by reason of the fact that it takes away the right?

By section 9, three-tenths of the tax is credited to the police fund, three-tenths to the general revenue fund.

Section 1693, Rev. Stat., provides, "Any appropriation of money for any purpose shall not be made except by ordinance."

Section 2689, provides the aggregate of all taxes levied or ordered by any municipal corporation, including the levy for general purposes, above the tax for county and state purposes, excluding the tax for school and school house purposes, shall not exceed in any one year in villages of the first class 8 mills, and in all other villages 10 mills on each dollar, of the value of any property, as valued for taxation on the county tax list, provided that the council shall annually, at the time the rate of levy is fixed, provide by ordinance for the distribution of the tax among the several departments of municipal corporation in such proportion to their needs as council may deem necessary; at no time thereafter shall the amounts therein specified as necessary for the purposes named, be changed, and all transfers of funds from one account to another are hereby expressly prohibited.

Section 2691, provides that council shall cause to be certified to the auditor of the county, on or before the first Monday in June annually, the percentage levied, etc. The ordinance prescribing the levy shall specify distinctly each and every purpose for which the levy is made, and the percentage thereof, etc.

Section 2698, provides that council shall not make any appropriations, or contract debts or obligations of any description for either of the purposes specified in the levy of council as provided for in sec. 2691, exceeding the amount of taxes and revenues from any other source for the current year, received for such purposes, and the money belonging to one fund shall not be transferred to another, nor used for any purpose except that for which it was collected or received.

Section 2699, grants the power to council to levy taxes for general purposes, limiting the amount.

Section 2683. grants the power to council to levy taxes, in addition to general purposes, for specified purposes.

There is no power conferred to levy a tax for the purpose of refunding the Dow law

tax, and under sec. 2698, council can not appropriate any taxes collected other than for the purposes for which it is levied.

It may be claimed that the police· fund and general revenue fund receive the benefit of the Dow law assessment, and it should be refunded from these funds. In the face of a mandatory provision it shall be returned. These funds may be exhausted. What the statute makes certain, would depend upon contingencies that would make the return of the money`very uncertain. Council can appropriate only for the purposes for which the fund is created. The general revenue fund is defined to be, for the general purposes of the corporation year by year; the police fund is defined to be, for the purpose of paying the marshal and police. The levies for each of these funds is certified to the county auditor on or before the first Monday in June of each year. Under the levies the county treasurer does .not collect, and hence can not pay into the corporation treasury until December 20 of each year. The money belonging to these funds, and to their credit, between June and December, arises from the levies of the prior year and the Dow law assessment. Hence, it follows, that to return the Dow law assessment from the corporation treasury is simply impossible, under present legislation.

Can the assessment be returned from the county treasury?

As we have said of the Dow law assessment, paid in the county treasury under sec. 9, as amended March 26, 1888:

Two-tenths of it is paid to the state.

Six-tenths of it is paid to the municipal corporation.

Two-tenths of it is retained by the county for the poor fund.

Under secs. 1115 to 1128, Rev. Stat., the county treasurers are compelled to pay over the money collected as taxes to the proper officer after settlement with the auditor, which settlement must be made on or before February 15 and August 10 of each year. In advance of the semi-annual statement the auditor may draw his warrant and the treasurer pay any sum not exceeding two-thirds of the current collection of taxes, as held by the supreme court in the case of Ratterman v. State, 44 O. S., 641. This is the imperative duty of the auditor and treasurer, so that the Dow law assessment paid in June, is not in the county treasury after August 10, and the Dow law assessment paid in December is not in the county treasury after February 15.

Section 3 of the Dow law, as amended March 26, 1888, provides: "That when any such business shall be commenced in any year after the fourth Monday of May, said assessment shall be proportionate in amount to the remainder of the assessment year, except that it shall be in no case less than $25.00, and the same shall attach and operate as a lien as aforesaid at the date of and to be paid within ten days from such assessment, and whenever any person, corporation or co-partnership engaged in such business, who has been assessed as aforesaid, and who has paid or is charged upon the tax duplicate with the full amount of said assessment, discontinue such business, the county auditor, upon being satisfied of that fact, shall issue to such person, corporation or co-partnership a refunding order for the proportionate amount of said assessment, except that it shall be in no case less than $50.00."

Concede that·a person, in the sense of this section, discontinue the business by reason of a prohibitory ordinance compelling him to. He is then entitled to a refunding order. What is a refunding order? Nothing more or less, than an order on the county treasurer to refund, in this case the assessment under the Dow law paid by the party. If the refunding order is issued after August 10, or February 15, we have seen there is no money .in the treasury belonging to these assessments under the Dow law. The funds have been distributed. So that, by this refunding order, the party could not receive a proportionate share of the assessment paid, as sec. 11 of the act provides, that he shall upon the passage of a prohibitory ordinance. Can this refunding order be paid out of the other revenues in the treasury?

Section 1038, Rev. Stat., provides, "No assessment shall be so returned except from the fund, or funds created in whole or in part, by such erroneous assessment."

From this it will be seen the refunding order must be paid out of the funds created by the assessments under the Dow law. If the refunding order is issued after August 10, or February 15, the funds created by the assessments under the Dow law, is not in the treasury, and the passage of a prohibitory ordinance thereafter prevents any fund created by the assessment under the Dow law, from again being in the treasury.

Under sec. 1038, Rev. Stat., is the revenue arising from the Dow law, an assessment, a fund, subject to a special and specific warrant upon the fund.

Section 6 of the Dow law requires the auditor to make and deliver to the county treasurer, a special duplicate of the assessments, and for which the auditor charges the treasurer.

Section 9 of the Dow law requires six-tenths of the amount collected upon the special duplicate to be paid upon the warrant of the county auditor, into the treasury of the corporation.

It makes but little difference what title you give to the assessment collected upon the special duplicate; sufficient is it that the auditor in drawing the warrant, must designate,

by the warrant, in order to enable the corporation treasurer to obtain the money, upon what fund it is drawn, and it can not be drawn other than upon the fund created by the Dow law assessment, for the Dow law, sec. 4, so provides. It is a fund created by the assessments, call it Dow law, or liquor tax fund, or anything else; it is still a fund raised in a special manner and for special purposes.

Again, can the refunding order be issued by the auditor upon the general revenue fund of the state, the poor fund of the county, the general fund and police fund of a municipal corporation, and as these various funds will be replenished from time to time by taxes levied and collected other than from Dow law assessments, the refunding order will finally be paid.

In the first place, under sec. 11 of the Dow law, the right to pass a prohibitory ordinance is coupled with a condition precedent, viz.: to refund. One depends upon the other, and the right to prohibit can not be exercised, when the right to refund is delayed for the collection of the money wherewith to refund; and in the second place, neither the county auditor or county treasurer have anything to do with the general revenue fund or police fund of a municipal corporation. So far as the county auditor or county treasurer are concerned, there is no general revenue fund or police fund of a municipal corporation, and there being no such fund, a warrant or refunding order can not issue.

Section 2691, Rev. Stat., provides: "The council shall cause to be certified to the auditor the percentage by it levied on the real and personal property in the corporation returned on the grand levy, etc., etc."

From this it will be seen that the only information the county auditor has (in law), as to the warrant levied by a municipal corporation, is the percentage levied for all municipal purposes.

Section 1047, Rev. Stat., provides, "That the auditor shall open an account with each village, in which immediately after his semi-annual settlement with the treasurer, he shall credit each with the net amount so collected for its use, etc., etc."

From this, it will be seen that the county auditor credits each village with the net amount due the village for all the purposes, not the amount due each village fund.

Section 2692, Rev. Stat., provides, "The corporation treasurer, or other person or officer having charge of the taxes paid over by the county treasurer, shall keep a separate account with each fund for which taxes were assessed, which account shall at all times be open to inspection."

So that the money collected by a county treasurer for a municipal corporation is not known in law as belonging to any special or specified fund until it is paid over by the county treasurer to the corporation treasurer, and by him distributed to the respective funds.

Again, it may be claimed that the supreme court held a similar law valid in the case of Gordon v. State, 46 O. S., 607, and in the case of Santoro v. The State, 46 O. S., 607.

The question now made was neither made nor attempted to be made in those cases.

The question made in those cases was, that the law was defective in this respect: "That the act does not provide adequate means for determining whether the signature on the petition to the township trustee for an election are genuine, and whether the signers constitute one-fourth of the qualified electors of the township."

The supreme court held that this objection did not impair the validity of the statute, and although in the syllabus of the case it was held a valid law, "valid law" must be construed in connection with the objection made to its validity, and upon which alone, the supreme court held it valid.

But does a party discontinue the business in the sense of sec. 3 when he is compelled to by a prohibitory ordinance?

Section 11 provides: "Upon the passage of a prohibitory ordinance, a ratable proportion of the tax paid by the proprietors thereof for the unexpired portion of the year shall be returned, so that, if the ordinance is passed, two months before the expiration of the year the party would be entitled to have returned to him two-twelfths of the tax paid; paying $250, there should be returned to him $41.67. Under this section he could not get a refunding order for any amount, as the refunding order he would be entitled to would be less than $50.00.

So, in our judgment, the words, "discontinue the business," in sec. 3, must be construed to mean where a party voluntarily discontinue the business, and not when he is compelled to by reason of a prohibitory ordinance.

What is the effect of all this?

First—State policy permits a party to engage in and run a saloon.

Second—This right or policy can be defeated by the passage of a prohibitory ordinance, and the return of a proportionate share of the tax assessment.

Third—The legislature has failed to provide from what source the assessment return shall be paid, or by whom it shall be paid.

This renders the local option feature of the Dow law impossible to execute, and therefore void. As held by the supreme court in the case of Cochran v. Loring, 17 O. S., 409,

wherein the court say: "Though a law is imperfect in its details, it is not void unless it is so imperfect as to render it impossible to execute; but the imperfection in its details may be supplied by rules of court."

This decision was followed and approved by the supreme court in the case of the State ex rel. v. Com'rs. 35 O. S., 458, 466, wherein Judge Okey says: "Because the act is vague and indefinite in its terms, cases may be found in which statutes have been held void on such grounds, but as decided in Cochran v. Loring, 17 O., 409, though the law is imperfect in its details, it is not void unless it is so imperfect as to render it impossible to execute."

Again, the supreme court say, in the case of the Railroad v. Commissioners, 38 O. S., as found quoted by Johnson, Judge, in his dissenting opinion, in the case of the State v. Sinks, 42 O. S., page 365, as follows: "Whether or not the infirmity avoids or effects the entire act depends upon the connection and dependence on each other, of its various provisions. Where they are so inseparably connected and so related to each other as to give rise to the presumption that a part would not have been enacted without the whole, the entire act is void; but where no such connection or dependence exists, that part of the statute, not in itself in conflict with any constitutional provisions, is as valid as if independently enacted."

Applying this rule, to the 11th section of the Dow law, in connection with the entire act, can it not be presumed that the legislature, after legalizing the keeping of ale, beer, or porter houses, and imposing an assessment for that purpose, would not delegate to municipal corporations the power to make the keeping of them illegal, only upon the refunding of part of the assessment, and that part to be paid before the party could be deprived of a right he had acquired by the payment of the assessment. Any other presumption would carry with it the conclusion that the law making power of the state was engaged in some scheme or devise to take from a party his money, under the disguise of "regulating the evils resulting from the traffic in intoxicating liquor" in order to defraud him out of it.

Entertaining these views we hold that sec. 11 of the Dow law is void, and that the motion in arrest of judgment should have been sustained.

The judgment of the common pleas, and the judgment of the mayor, will be reversed, and the defendant discharged.

MOORE and BEER, JJ., concur.