# Fulton, *et al. v.* The State.

## *Bill to Abate Liquor Nuisance.*

(Decided Jan. 31, 1911. Rehearing denied Feb. 16, 1911. 54 So. 688.)

1. *Statutes; Codification; Repeal.*—Construing together Acts 1909, p. 174, and section 10, Code 1907, it is held that the Act re-adopting the Code (Acts 1909, p. 174) did not have the effect to repeal either the Carmichael or the Fuller Bills, which were respectively Acts 1909, p. 8, and Acts 1909, p. 63.

2. *Same; Title; Provision.*—The provisions of the Carmichael and Fuller Bills authorizing proceedings in equity to abate liquor nuisances and for the seizure of liquors, and personal property used in connection therewith, were germane to the title of the act, and fully within their scope.

3. *Constitutional Law; Due Process; Regulating Intoxicating Liquors.*—The reasons and urgency for the regulation, restraint and even absolute prohibition of the liquor traffic do not authorize the legislature to arbitrarily deprive a citizen of his rights or liberties with reference thereto or of his property rights therein.

4. *Same; Unconstitutionality; Right to Urge.*—Only those affected to their prejudice or injury can urge the unconstitutionality of an act or statute.

5. *Same; Proceedings in Equity.*—Acts 1909, p. 8, and Acts 1909, p. 63, known as the Carmichael and Fuller Acts respectively, are not unconstitutional as depriving the owner of his property without due process of law since his right to trial of the issues in equity is a sufficient compliance with the Constitutional mandate.

6. *Intoxicating Liquors; Regulation.*—The legislature has power to regulate or to absolutely prohibit the manufacture, sale or other disposition of intoxicating liquors within the state and may declare a place kept or maintained for such purpose to be a common nuisance.

7. *Same; Jury; Right to Trial by.*—Acts 1909, pp. 8 and 63, are not invalid as depriving a citizen of a right to trial by jury, nor as a legislative attempt to enforce a criminal law by civil actions.

8. *Searches and Seizures; Police Power; Destruction of Property.*—The state's police power extends to searches and seizures and to a destruction of property which is the subject of a crime or the means of perpetrating it; hence, the Fuller and Carmichael Acts are not unconstitutional as in effect authorizing a taking of private property for public use without compensation, as such constitutional provision does not prevent proper provisions for the forfeiture and confiscation of property used to commit crime.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by the State on the relation of the Attorney General against C. L. Fuller and others, to abate a liquor nuisance. From a decree overruling demurrers to the bill, and denying the motion to dissolve the injunction and discharge the writ of seizure, defendant's appeal. Affirmed.

J. W. DAVIDSON, J. A. W. SMITH, WILLIAM VAUGHAN, and A. LEO OBERDORFER, for appellant. The Carmichael

and Fuller Bills were repealed by the Acts of 1909, re-adopting the Code, and by section 10 of the Code.— *Maxwell v. The State,* 89 Ala. 161; *Coe v. Lawrence,* 1 7. & B. 516; *City of Montgomery v. Wyche,* in MSS. 26 A. & E. Enc. of Law, 1598; *Bartlett v. Morris,* 9 Port. 266. The Act is violative of section 5 of the Constitution of 1901.—*Elder v. The State,* 162 Ala. 50; *Fisher v. McGirr,* 61 Am. Dec. 381; *Dupre v. The State,* 119 S. W. 301; *Beavers v. Godwin,* 90 S. W. 930. The Acts, or some portion thereof are in conflict with section 45 as the caption of the act does not indicate a purpose to declare a common nuisance or a liquor nuisance.—*Patton v. The State,* 160 Ala. 111; *State v. Sims,* 162 Ala. 179; *L. & N. v. Grant,* 153 Ala. 113. The act is also violative of section 13 of the Constitution.—*Mugler v. Kansas,* 123 U. S. The granting or refusing of preliminary injunctions is a matter resting largely within the discretion of the court.—*Davis v. Sowell,* 77 Ala. 275. And the effort of the legislature in these bills to take this discretion and judgment away from the court is an attempted interference by the legislature with judicial discretion, and is an unwarranted invasion of the exercise of the judicial functions.—Secs. 139 and 146, Const. 1901, and authorities cited under same; *United States v. Todd,* 154 U. S. 53; *Ex parte Seabold,* 100 U. S. 393; *Norwald's St. Ry. Co.'s Appeal,* 39 L. R. A. 799. Counsel discuss the effect of the Carmichael and Fuller Bills upon the Ballard Statewide Bill, and conclude that the provisions relative to said Ballard Bill are unconstitutional.

ALEXANDER M. GARBER, Attorney General, THOMAS W. MARTIN, Assistant Attorney General, SAM WILL JOHN, and S. D. WEAKLEY, for appellee. Section 2 of the Act readopting the Code (Acts 1909, p. 174) ex-

[Fulton, et al. v. The State.]

pressly saves the Carmichael and Fuller Bills from re-peal in the adoption of the Code. Neither of the Acts are violative of section 45 of the Constitution.—*Toole v. The State,* 54 South. 195; *Bell v. The State,* 115 Ala. 87; *Street v. The State,* 117 Ala. 208; *Lindsey v. U. S. S. & L. Assn.,* 120 Ala. 156; *Mitchell v. The State,* 134 Ala. 392. The legislature had the power to declare a sale of liquor a nuisance, and to authorize equity to abate it.—*Dawn v. The State,* 34 Ala. 216; *Pike County Dispensary v. Mayor, etc.,* 130 Ala. 193; 108 Ia. 396; 119 N. Y. 226; 154 U. S. 133; 13 Idaho, 457; 116 Ga. 401; 96 Maine 559; 29 Cyc. 1196; 17 A. & E. Enc. of Law, 318 to 324. The legislature has the power to confer upon courts of equity the power to use equitable remedies to prevent the violation of criminal law.—Authorities supra, and *Mugler v. Kansas,* 123 U. S. 205; 134 U. S. 801; 149 Mass. 550; 23 Cyc. 302. The Act does not authorize unreasonable searches and seizure, but its provisions afford a strict compliance with all constitutional requirements, and are not in conflict with section 5 or the Constitution.—Authorities supra. As to the power of the state to control by legislation the process of the courts and their jurisdictions, attention is directed to *Twining v. New Jersey,* 211 U. S. 97.

MAYFIELD, J.—This bill was filed by the state, on the relation of the Attorney General, to abate and enjoin a "liquor nuisance," as defined and provided for by two acts of the Legislature, one known as the "Carmichael Act," and the other as the "Fuller Act."—Acts 1909, pp. 8, 63. The bill also prayed for a writ of seizure to issue as for the goods and chattels alleged to be used in connection with, and in carrying on, the nuisance, all of which is provided for in the two acts of the Legislature to which reference is made. Upon the filing

of the bill, verified by affidavit, and its material aver-ments being supported by independent appropriate af-fidavits, a temporary injunction and writs of seizure is-sued, in accordance with the prayer of the bill. The bill and process seem to conform to the statutory re-quirements so made and provided. The respondents in-terposed demurrers to the bill, and moved the court to both dissolve the injunction and discharge the writs of seizure and restore the property seized to respondents. The demurrer and the motion were heard and overruled and denied. From these interlocutory orders and de-crees, this appeal is prosecuted.

The first proposition asserted and insisted upon by appellants is that both the Carmichael and Fuller acts are inoperative because repealed by a subsequent act of the Legislature, of August 26, 1909, which re-adopted the Code of 1907.—Acts 1909, p. 174.

The readopting act is short, and reads as follows:

"Section 1. That the three printed volumes pub-lished by authority of law in 1907, known as the Polit-ical, Civil, and Criminal Codes, containing sections 1 to 7900 both inclusive together with the rules of prac-tice of courts, be and the same are hereby adopted as the Code of Alabama."

"Sec. 2. That all acts of the Legislature, passed at the special sessions of the Legislature, altering, amend-ing or repealing either the sections of the Code, or the acts of the Legislature passed at the general or special sessions are unaffected by the adoption of this Code."

The Carmichael and Fuller acts were both passed at the special session at which the act readopting the Code was passed. The Carmichael act was passed on the 9th day of August, and the Fuller act on the 25th day of August, and the readopting act was passed on the 29th day of August of the same year (1909.)

[Fulton, et al. v. The State.]

It is argued—with some force and plausibility—that, as the Code was thus readopted after the passage of these two general acts, the repealing sections contained in the Code so adopted worked the repeal of all general laws, including the two in question, which were not excepted by section 2 of the readopting act.

Section 10 of the present Code (the retaining and repealing clause of all our previous Codes), after enumerating certain general and local laws not to be repealed by the Code (which enumeration does not include the acts in question), concludes as follows: "But subject to the foregoing provisions, all statutes of a public, general and permanent nature, not included in this Code, are repealed."

But for section 2 of the readoption act, the two statutes in question would probably be repealed by the above-quoted provision in the Code as readopted.

It therefore becomes necessary to construe the act readopting the Code, and especially section 2 thereof, to see if the Carmichael and Fuller acts were excepted from the general laws repealed by the Code as readopted. In construing this statute, as all others, we should ascertain the intent or will of the lawmakers, and give the statute that effect, if that will or intent is consistent with a reasonable interpretation of all statutes in general (be they penal, or beneficial, restrictive, or enlarging of the common law) four things are to be discerned and considered:

"(1) What was the law before the making of it?

"(2) What was the mischief and defect for which the law did not then provide?

"(3) What remedy the Legislature hath resolved and appointed to cure the disease of the commonwealth?

37—171

"(4) The true reason of the remedy. And then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle intentions and evasions for continuance of the mischief, and pro privato commodo, and to add force and life to the remedy, according to the true intent of the makers of the act, pro bono publico."

"(5) But, if the intention of the lawmakers has not been carried into effect by the language used, it is better that we should abide the words of the statute, than to reform it according to the supposed intention.

"(6) When the language is not only plain, but admits of but one meaning, the task of interpretation can hardly be said to arise (and incidental rules which are mere aids, to be invoked when the meaning is clouded, are not to be regarded). It is not allowable, says Vattel, to interpret what has no need of interpretation. The Legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction. But whilst it may be conceded that where its provisions are ambiguous, and the legislative intent is doubtful, the effect of several possible constructions may be looked at in order to determine the choice, it is very certain that when once the intention is plain it is not the province of a court to scan its wisdom or its policy. Its duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words."—*Hilliard v. State*, 100 Ala. 634, 13 South. 756.

(7) In the construction of statutes, they should be so interpreted, if practicable, that the intention of the Legislature may be carried into effect, and the spirit of the enactment preserved. Under the influence of this rule, the letter is frequently sacrificed to the gen-

eral purpose of the act.—*Kennedy's Heirs and Executors v. Kennedy's Heirs,* 2 Ala. 572.

(8) The office of construction is to ascertain what the language of an act means, and not what the Legislature may have intended. "Index animi sermo." The court knows nothing of the intention of an act, except from the words in which it is expressed, applied to the facts existing at the time; meaning of the law being the law itself.—*Maxwell v. State,* 89 Ala. 150, 7 South. 824.

(9) This rule of construction does not imply that the letter shall control the spirit. A thing may be within the letter of a statute and not within the meaning or spirit, or it may be within the clear meaning or spirit and not within the letter. Courts, in construing statutes, often look less to the letter than to the context, the spirit, or the meaning of the statutes to arrive at the true intent of the lawmaker. Statutes are often drawn inartificially. Apt words are not always used, and perspicuity and precision are not always observed, by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent.—*Thompson v. State,* 20 Ala. 54; *Atkins' Case,* 18 Wall. 301, 21 L. Ed. 841.

(10) Two or more statutes or laws are often in pari materia, and where they are they should all be looked to, in order to ascertain the meaning and intent of each.

(11) Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. This is never the case if there be a reasonable field of operation, by a just construction, for both; for

then they will both be given effect. This is preferable to repeal by implication.—*Riggs v. Brewer,* 64 Ala. 282; *Herr v. Seymour,* 76 Ala. 270; *Wyman v Campbell,* 6 Port. 219, 31 Am. Dec. 677. Each statute which constitutes a part of a system of laws should, if practicable, be so construed as to make the system consistent in all its parts; each is thus considered a part of the whole.

(12) That construction of a statute is correct which gives effect to the intent of the lawmaker. The intent of the lawmaker is the law. If the meaning of the language used is clear and certain, there is neither room nor occasion for interpretation. It is only when the meaning of the language used in a statute is not obvious that courts are needed or authorized to construe them. But if the meaning of the language used is uncertain, or the intent rests in inference, then construction or interpretation by courts is useful and proper.

(13) Statutes may be repealed by implication; the courts do not, however, favor such repeal, and if, by a fair and reasonable construction of a later and former statute, the two can be reconciled, and each left to operate, that construction will be adopted.—*Smith v. Speed,* 50 Ala. 276; *Iverson v. State,* 52 Ala. 170; *Enloe v. Reike,* 56 Ala. 500; *Parker v. Hubbard,* 64 Ala. 203; *Cook v. Meyer,* 73 Ala. 580; *Roberts v. Pippen,* 75 Ala. 103; *Jackson v. State,* 76 Ala. 26; *Herr v. Seymour,* 76 Ala. 270.

(14) A general repealing clause does not operate a repeal of an existing statute relating to the same subject-matter, not in conflict with the provisions of the act; it is no more than a legislative declaration of the necessary effect of the act if the clause had not been inserted.—*Ogbourne v. Ogbourne,* 60 Ala. 616.

(15) A statute attempting to repeal a number of sections of the Code by naming them and also attempting to re-enact them would possibly not repeal them; but where, in addition, it enacts a new law in substitution of the Code provisions, it operates a repeal of such sections.—*Turnipseed v. Jones,* 101 Ala. 493, 14 South. 377.

Applying these rules of construction to the readopting act, we are constrained to hold that neither the Carmichael nor the Fuller act was repealed, and that they were, at the filing of the bill, in force in this State, in so far as the provisions thereof are constitutional, if otherwise constitutionally enacted—questions we do not decide, except so far as they are raised on this appeal and are necessary to a decision of the case under consideration. Each of the acts was passed at a special session of the Legislature—the same special session which passed the readopting act. Each altered, amended, or repealed, expressly or by reasonable implication, sections of the Code, or acts of the Legislature passed at the general or special sessions thereof; and was therefore unaffected by the adoption of the Code. Each was therefore within the letter of the excepting or retaining clause of the act adopting the Code. We do not think that the Legislature intended, by the use of the present participles, "altering," "amending" or "repealing" to include, and thus from repeal by the adoption of the Code, those acts, and those only, which are technically known in constitutional and statutory law as "altering," "amending" or "repealing" statutes. That is to say, that they embraced those acts, and those only, the title and express purpose of which were to alter, amend, or repeal some sections of the Code, or some other statute. We think those words, as used in section 2 of the adopting act, include and save

from repeal those acts which by reasonable implication alter, amend, or repeal, as well as those which expressly so repeal.

. We do not think that construction should be here adopted, which would limit the acts to be saved from repeal, to those acts which are technically known as altering, amending, or repealing statutes.

As has been held by this court repeatedly, a subsequent statute, revising the subject-matter of a former statute, and intended as a substitute for it, although it may not contain express words of repeal, will, on principles of law, as well as in reason and common sense, so operate.—*Ogbourne v. Ogbourne,* 60 Ala. 616; *Cahall's Case,* 61 Ala. 232; *Lemay v. Walker,* 62 Ala. 39; *Scott v. Simpson,* 70 Ala. 352.

Words are to be construed in the popular and plain sense in which they are generally understood, unless it clearly appears that they were intended to be employed in some other sense.—*Harrison v. State,* 102 Ala. 170, 15 South, 563. It would hardly be contended that there are very many intelligent people, male or female, in this state, that do not know that the Carmichael and Fuller bills were intended to, and did, alter, annul, or repeal existing laws, Code or statutory, on the subject of the liquor traffic. And each member of the Legislature that passed the bills, as well as the Governor who approved them, must be presumed to have known that they each altered, amended, and repealed certain acts passed at the general or special session of the Legislature, at which they were passed. The history of the recent legislation on this subject is well known by all the people in this state. Hence the Legislature, the Governor, and this court must be presumed to know it.

[Fulton, et al. v. The State.]

The acts in question are to be found in the Special Session, 1909, Acts, at pages 8-13 and 63-95. The first is known as the "Carmichael Act," and the latter as the "Fuller Act." The first was approved August 9, 1909 and the latter, August 25, 1909.

While each of these acts is a separate and independent legislative enactment, both form a part of what is known as the prohibition laws of this state. They are the last two of a number of general prohibition statutes passed in this state at the last general and special sessions of the Legislature. Among the general prohibition statutes which preceded these two may be mentioned the act of November 23, 1907 (Acts S. S. 1907, pp. 71-79), known as the Ballard Act," which has been before this court for construction in the cases of *State ex rel. Collman v. Pitts,* 160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79; *State ex rel. v. Skeggs,* 154 Ala. 249, 46 South. 268; also the act approved February 26, 1907, known as the "Local Option Prohibition Act" (Acts 1907, G. A. pp. 200-205); also, the act of March 13, 1907 (page 377), known as the "Dispensary Act."

There were a great number of other acts passed at the last general and special sessions relating to the subject of regulating and prohibiting the sale and other disposition of intoxicating liquors. The last two acts named were codified, and were adopted on July 27, 1907, and readopted on August 26, 1909, as a part of the Code law of this state, except in so far as repealed, modified, or substituted, by the Ballard, Carmichael, and Fuller acts, or other acts passed subsequently to the acts adopting and readopting the Code. There are now, and were, before the passage of these bills, other Code provisions relating to the regulation and prohibition of the liquor traffic, if not repealed or substituted by these or other acts.

Recurring to the history of legislation in this state, passed at the last regular and two special sessions of the Legislature, upon the subject of the liquor traffic (as we should do, when construing acts passed at that time, upon that subject—especially when the acts up for construction were the last passed at·any of these sessions), we know that one of the purposes for which the special session of the Legislature was called was to amend the prohibition laws of Alabama. . That purpose was clearly and forcefully expressed in a public message of the Governor to the Legislature when convened for the last extraordinary·session of 1909—the session at which the Carmichael and Fuller acts and the re-adopting acts were passed. That message was in part as follows: "I call your attention to the fact that at the extra session when you were newly returned from the people where prohibition had been widely discussed, of your own initiative and by an overwhelming majority, you enacted the state-wide prohibition law. That statute has been found inadequate of enforcement. The evasions of the law have been many and apparently easy. In some places open defiance of the law has been manifest, and the so-called 'blind tiger' is abroad. You should not shoot tigers with blank cartridges or bird shot. It only tends to make them more vicious. It is within your power to enact laws suppressing open, will-ful violations of any particular law. It is within your power, and it is your duty to the state, to enact such statutes as will enable the state to carry out the execution of your state-wide prohibition law."

The Carmichael and Fuller bills were evidently drawn and passed for the purpose expressed in the Governor's message; such purpose being also clearly expressed in their titles. It therefore seems that there should be no doubt that the Legislature intended that

[Fulton, et al. v. The State.]

the bills in question should, and that they did, alter,
amend, or repeal statutes passed at the regular special
session preceding the one of 1909. If so, these acts were.
expressly preserved from repeal by the act adopting
the Code thereafter, because the act adopting the Code
so expressly declares.

Moreover, would it be a reasonable construction to
place upon the act readopting the Code, to interpret
it as repealing the very laws which the Legislature was
called in extra session to pass, and which they did pass,.
and as to which no express word can be found which
indicates any intention to so repeal? Must we hold
that, by one act passed at that extra session (an act for
the passage of which the session was not called) the
Legislature, by implication, repealed nearly if not quite
all those acts for the passage of which it was specially
called? And must we so hold, when the Legislature
certainly made the attempt to except such laws from
repeal? We think not. Such a construction would be
unreasonable, and would unnecessarily attribute to the
Legislature the fault of foolish and frivolous legisla-
tion, and of destroying by implication, what had been
their express and declared purpose to accomplish by
two extra sessions.

We therefore hold that neither the Carmichael nor
the Fuller bill was repealed by the readoption of the
Code.

It is next insisted by appellants that, if these two
laws were not repealed, the provisions thereof which
authorize and provide for proceedings like that insti-
tuted by this suit are unconstitutional and void, be-
cause in violation of certain mentioned inalienable
rights of the citizens, guaranteed to them by the Bill of
Rights, contained in the state and federal Constitu-
tions. It is claimed by the appellants that these pro-

visions of the Carmichael and Fuller bills, which authorize and provide for suits like this, deprive the citizen of his property without due process of law; that they deprive him of the right of jury trial, and attempt to authorize seizures and searches in violation of the Bill of Rights.

It is also insisted that the acts are void because the titles thereof are in violation of section 45 of the Constitution; and that these parts of the acts which authorize and provide for proceedings like this are void because not germane or cognate to the title.

If there ever was, there is now no doubt that it is within legislative competency for a state Legislature to regulate or prohibit absolutely the manufacture, sale, or other disposition of intoxicating liquors within the state. It is likewise settled beyond dispute that the Legislature may declare that any place kept and maintained for the illegal manufacture, sale, or other unlawful disposition of such prohibited liquors, to be a common nuisance, and to authorize and provide for the abatement and injunction thereof by a proceeding in a court of equity. Such statutes have uniformly been held not to deprive the citizen of trial by jury, and not to be an attempt by the Legislature to enforce a criminal law by a civil action.

It is also settled by well-nigh all the authorities that the Legislature may declare the possession of certain articles or chattels, in particular places and under particular circumstances, to be unlawful, if they would be injurious, dangerous, or noxious to the public. Articles which are treated by law as property, when used lawfully, may be treated by the same law as not possessing the attributes of property, when used for unlawful purposes.

[Fulton, et al. v. The State.]

The Legislature may also provide for the search and seizure of all articles, even those that possess the attributes of property, if such articles are kept and used for an unlawful purpose, and after being seized and properly condemned by proper tribunals, so as to amount to due process of law, such articles may be confiscated or destroyed by authority of law. And statutes authorizing such procedure have, as a general rule, been upheld as constitutional. The police power of the state certainly extends to searches and seizures, and to a destruction of the property, the subject of the crime, or the means of perpetrating it.

Under the ancient English law, a chattel with which a homicide was committed, called a deodand, was declared to be forfeited, and given to the gods. Such, of course, has never been the law in this state, but it was probably the foundation of English and American statutes providing for the forfeiture and destruction of property used for the purpose of perpetrating crime.

Statutes may provide for injunction of liquor nuisances, and for searches and seizure of chattels used in carrying on such nuisance, without violating the Constitution as to the taking of private property for public use without compensation. This provision of the Constitution does not prevent proper provisions as to forfeiture and confiscation of property used for the purpose of committing crime. But such statutes must give the person accused of carrying on the nuisance an opportunity to defend himself and his property. Such powers must always be exercised by the Legislature in conformity to all the provisions of the Constitution. The Legislature, in enacting such statutes, should constantly bear in mind the limitations which the Constitution has placed upon their powers. The exercise of such a power should be properly guarded to prevent

abuses. The citizen is guaranteed security of his person, houses, and possessions from unreasonable searches and seizures. Consequently, all statutes on this subject must observe these constitutional guaranties of the citizen.

The fact that the liquor traffic belongs peculiarly to the police power of the state, and that the police power of the state is almost unlimited, especially as regards this subject, and that the abuses of the traffic to which it is liable are so great, and that the traffic is attended with so much crime and pauperism that a state could probably dispense with even the existence of intoxicating liquors without serious detriment to the aggregate interests, or even with absolute benefit, are not reasons, authority or justification for the Legislature to abridge or deny any of the constitutional rights guaranteed to the citizen by the fundamental law. These reserved and secured rights of the citizen, many of which are enumerated in the Bill of Rights, cannot be made to yield to benevolent, philanthropic, or moral speculations. These rights are institutions of the fundamental and paramount law, and not the result of science, morals, or economy.

If the citizen has acquired constitutional rights or liberties as to intoxicating liquors, the Legislature can no more arbitrarily deprive him of these rights or liberties than it can of his other property rights, or of his liberty of religion.

The reasons and urgency for the regulation, restraint, and even absolute prohibition of the liquor traffic are many and great, and may be said to be indisputable, and the Constitution contains no inhibition against legislation for such purposes; but in doing this the Legislature is restrained and prohibited from abridging or denying to the citizen any of the rights

guaranteed and secuerd to him by the Constitution.
So great has been the regard for the fundamental law
for these reserved rights of the citizen, that it will not
authorize the least arbitrary violation of them, not even
for the general good of the whole community.　In
cases, however, of dire necessity to take his property
for public use, the law has provided that, if taken for
that purpose, compensation must be first made.　State
Legislatures are almost, but not quite, omnipotent as
lawmakers.　The federal and state Constitutions con-
tain some restraints and limitations upon their powers.
They cannot compel the citizen to do that which the
Constitutions say he shall not be required to do; nor
can they require him to refrain from doing that which
the Constitution authorizes him to do.　The Legislature
cannot impair the obligation of private contracts, nor
can they deprive the citizen of his life, liberty, or prop-
erty, except by due process of law.　They cannot estab-
lish a religion, nor compel the citizen to attend any
place of worship.　They cannot impose any religious
test as a qualification to office.　They cannot restrain
the liberty of speech or of the press.　They cannot deny
a person, accused of crime, of the right to be heard by
himself or counsel, nor to be confronted by the wit-
nesses against him; nor deprive him of the right of jury
trial in those cases in which the right is secured by the
Constitution.　None of these things will the Consti-
tution allow the Legislature to do, even under the guise
of a prohibition law.　The Legislature, as powerful as
it is, has no more right to overstep the Constitution
than has the citizen or an alien to overstep the statu-
tory law.　The Bills of Rights are restraints upon their
powers and they should regard them.

　　The Constitution and laws of a state are the basis
of public tranquility, the firmest support of political

[Fulton, et al. v. The State.]

authority, and the only security for the liberty of the citizen. But "Constitutions are vain phantoms, and the best of laws are useless, if they be not rigorously observed."

Constitutions are not often openly and boldly opposed, as are statutes. The attacks and assaults against them are usually silent and gradual, and their changes insensibly happen by a long train of steps that are but slightly marked; unless these attacks are carefully watched and guarded by the courts, it is possible for the legislative department of a nation to almost entirely change the original Constitution. Laws are regulations established by public authority, to be observed in society, and they ought to relate to the welfare of the state and of the citizens.

The two things that contribute most to the establishment and maintenance of justice are good laws and the prompt and efficient execution thereof. The best laws, as before said, are useless, or worse, if they be not observed. The habitual disregard of some laws breeds contempt of all. Upon the proper and prompt enforcement of the laws, in a great degree, depend the happiness, glory, and tranquility of a nation or people.

The bill in this case alleges, in legal effect, that respondents were operating and maintaining a "blind tiger," on the first floor of the Metropolitan Hotel in the city of Birmingham, and that they were using certain chattels named, in the carrying on of the unlawful business, and that such places and business as so operated constituted a public nuisance; and the bill (as is authorized by statute) seeks to enjoin and abate such nuisance, and, for such purpose, to seize the chattels which were so used for the purpose of violating the law in operating and maintaining such nuisance.

[Fulton, et al. v. The State.]

It needs no argument or authority to establish the proposition that to operate or maintain what is commonly known as a "blind tiger" is to maintain a nuisance. We cannot conceive how it would be possible for a man to select and engage in a business, the necessary result, if not the very object and purpose of which, was to continually violate the law and defy or evade its execution, without maintaining a nuisance; more particularly, when the business itself, as carried on, tends to pauperism and crime, as does that of the "blind tiger."

A statute which is intended to prevent and abate such nuisances, and nothing more, certainly does not contravene any provision of the Constitution nor violate any of the citizen's inalienable rights as to property, life, or liberty. Nor does authorizing such proceedings in a court of equity to abate or enjoin such nuisance, or to authorize the seizure of such property so used for the sole purpose of thus committing crime, deprive the citizen of the right of trial by jury, or take his property for public use without compensation. Courts of equity have always, and everywhere, been accorded that jurisdiction or power, without violating any constitutional rights. Such statutes and such proceedings have always been held to be due process of law, where the owner of the property and the business is given or accorded the right to due notice and to defend in a court of equity, as is usually provided in such courts in similar proceedings. Courts of equity were accorded this power before there were any written Constitutions, and hence the citizen is not, by such statutes, deprived of any rights he theretofore had. His rights in this regard remain inviolable after the passage of the statute.

If the allegations of the bill are true—and on this hearing they must be so treated—we can see no constitutional right of which these respondents have thus been deprived by the statute or the proceedings in the lower court.

We must not be understood as holding that all of the provisions of both of these bills under consideration are constitutional and unassailable in any proceeding. We are only deciding the case in hand. We do, however, hold that the provisions of these acts of which these respondents complain, so far as their rights or liberties are concerned in this case, as shown by the record now before us, are constitutional and valid.

It is only those who are injured or prejudiced by statutes—and then, not until they are so injured or prejudiced thereby—who can set up or raise the unconstitutionality of such laws. Courts should never pass upon the constitutionality of statutes until required so to do.

We do not see that the trial court has exceeded the powers given it under the law, in this case, or that there has been any abuse of its process, so far, in these proceedings.

It is next argued that the two acts, one or both, are void because the titles of the bills were in violation of section 45 of the Constitution. The same question involved and the same arguments used in this case have been twice before passed upon by this court; in the cases of *Alford v. State,* 170 Ala. 178, 54 South. 213, and *Toole v. State,* 170 Ala. 41, 54 South. 195. In both of these cases the titles to one or both of these acts were held to conform to the provisions of section 45 of the stitution, and we refer to what is there said, in answer to the same questions here presented.

[Moseley v. Smiley, et al.]

It is also argued that the provisions of these two bills which authorize and provide for a proceeding like this are not germane and cognate to the titles of such bills if the titles be sufficient to support any parts of the bills. We cannot agree to this contention. We think that such provisions authorizing this proceeding are germane and cognate to the titles of the bills; and the same was in effect, if not expressly, so held in *Toole's Case.*

Finding no error in the decree or orders of the trial court, they must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MCCLELLAN, JJ., concur.

