# The State *v.* Lamar.

## *Violating Fertilizer Law.*

(Decided May 9, 1912.  59 South. 473.)

1. *Agriculture; Fertilizer; Meal; Offenses.*—Construing sections 45,
6881 and 6887, Code 1907, it is held that it is no offense to sell cotton
seed meal, not in combination, for fertilizer without the tax tag re-
quired to be attached to other fertilizer, such tags required to be
attached being merely the guarantee of the seller.

2. *Statutes; Codification; Effect.*—Statutes enacted after July 9,
1907, and incorporated into the Code in accordance with the pro-
vision of Acts 1907, p. 499, acquired no sanction by their presence
in the Code so as to repeal acts not so incorporated.

3. *Same; Repeal.*—Acts 1909, p. 174, adopting the Code of 1907,
in section 2 thereof saves Acts 1907, (S. S.) p. 20, from the influence
of section 10 of the Code which has the effect to repeal all general
statutes not incorporated therein.

4. *Same; Construction.*—Statutes must be construed as written
although leading to unwise consequences, and hence, Acts 1907, p.

[The State v. Lamar.]

22 (S. S.) cannot be so construed as to carry by implication, the penal provisions of the fertilizer law; but merely to apply to cotton seed meal the provisions of sec. 24, Code 1907, requiring manufacturers, jobbers and manipulators of commercial fertilizers to register their brand.

5. *Same; Amendment; Constitutional Requirement.*—In view of section 45, Constitution 1901, section 5 of Acts 1907, p. 22, (S. S.) does not extend the criminal provision of the fertilizer law so as to cover sales of cotton seed meal.

Certiorari to Court of Appeals.

Original proceedings in habeas corpus by Law Lamar, to secure his discharge from imprisonment under a warrant of arrest. There was a judgment of the Court of Appeals (5 Ala. App. 259, 59 South. 737) reversing a judgment of the city court discharging petitioner, and he brings error. Judgment of the Court of Appeals reversed, and accused discharged.

REESE & REESE, for appellant. There is nothing in section 5, Acts 1907, (S. S.) p. 22, which permit, or even suggest, the principle of repeal by implication.— *Abernathy v. State,* 78 Ala. 413; *State v. White,* 160 Ala. 168. Repeals by implication are not favored.— *B'ham v. So. Ex. Co.,* 51 South. 159. Said section 5 is in plain and unambiguous language, and there is no room for construction.—50 Ala. 365; 89 Ala. 116; 9 Port. 366; 2 Cranch. 358; 7 Cranch. 52. Its plain import is to authorize and permit the sale of every grade of cotton seed meal, not in combination as cotton seed meal without the tag required for fertilizer, and if it be construed according to the contention of the state, it becomes a criminal statute, and must be construed within the strict letter of its words.—36 Cyc. 1189; *Bir. v. So. Ex. Co., supra;* 88 Ala. 122. If there is any doubt, the doubt is already resolved in favor of the tax payer.—29 Ala. 81; 70 Ala. 156; 80 Ala. 219. To give sec 5 the construction contended for, would render it

unconstitutional as violative of sec 45 of the Constitution.—*Ex parte Gayle,* 108 Ala. 516; *Randolph v. Builders S. Co.,* 106 Ala. 507. The courts never construe an act in such a way as to render it unconstitutional when it can be given any other reasonable construction.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for Appellee. Cotton seed meal is required to be tagged under the laws governing the sale of fertilizer.—*State v. Law Lamar,* 5 Ala. App. 259, *Youngblood v. B'ham Co.* The Code was adopted by an act which provided that no act passed after a certain time shall be repealed or affected in any manner by the adoption of the Code, and that all acts of a general nature passed after a certain time shall be the reason that it became a law after the act adopting the Code was enacted, and hence, the act must be construed as originally adopted.—*State ex rel. v. Miller,* 158 Ala. 59; *Fulton v. State,* 54 South. 688; *City of Montgomery v. Walsh,* 53 South. 786. The subsequent statutes must operate as a repeal, although it contains no express words of repeal.—*Ogburn v. Ogburn,* 60 Ala. 616; *Cahill's Case,* 61 Ala. 232; *Lemay v. Walker,* 62 Ala. 39; *Scott v. Simpson,* 70 Ala. 352.

SAYRE, J.—Law Lamar was taken into custody on a warrant issued by a magistrate upon an affidavit, dated September 27, 1911, charging that said Lamar "did sell cotton seed meal containing 7½ per cent. of ammonia, for fertilizing purposes, without having attached to the package containing the same the tax tag (Alabama tax tag) prepared by the Commissioner of Agriculture and Industries." On a proceeding by habeas corpus, the question being whether the affidavit charged any offense, the judge of the city court or-

dered the discharge of the accused. That judgment was reversed in the Court of Appeals, whence the case comes to this court by writ of error.

The Code of 1907 was first adopted by the act approved July 27, 1907 (Gen. Laws 1907, p. 499), and went into effect May 1, 1908. In the chapter given to Agriculture and Industries, provision is made for the analysis, registration, branding, tagging, and sale of fertilizers and fertilizer materials. The tags which are required to be used in such case are issued by the Commissioner, and their price is fixed by law. They are appropriately called "tax tags." By article 3 of the chapter, the sale of cotton seed meal "offered for sale as a fertilizer" is also regulated, and the observance of the regulations there made is enforced by a criminal statute.—Code, § 6887. But the tags to be used in case of a sale of cotton seed meal in bags or packages are not furnished by the state. They imply only the seller's personal guaranty as to the ammonia content of the meal. They are not tax tags. By section 6881 it is declared that the sale, exchange, or offer for sale or exchange, of any fertilizer, which has not been tagged as provided by law, shall constitute a criminal offense, punishable by penalty, which may be widely variant from that denounced against violations of the law made for the regulation of the traffic in cotton seed meal as a fertilizer. And section 45, to be found in article 2 of the chapter wherein the sale of fertilizers is regulated, provides that "the term 'fertilizer material' used in this article shall not include common lime, land plaster, cotton seed meal, ashes, or common salt, not in combination." We take it to be a necessary consequence of this section that cotton seed meal is not a fertilizer, within the meaning of the article. This recital of the provisions of the Code makes it plain that,

[The State v. Lamar.]

as for anything appearing in the Code, cotton seed meal, not in combination, does not fall within the evil denounced by section 6881. But the affidavit shows a sale of cotton seed meal for fertilizing purposes without having a tax tag—the Commissioner's tag—attached; and the only construction of which it is capable would refer it to that section, so that, if its meaning and effect were to be determined on the Code alone, the affidavit charged no offense.

On August 14, 1907, was approved an act making various amendments in the law concerning the manufacture and sale of fertilizers and fertilizer materials in this state.—Gen. Acts 1907, p. 744. By section 15 of that act, section 392 of the Code of 1896 was amended in two respects: In the forepart of the section, the words "fertilizer materials" were substituted for "fertilizer or commercial fertilizer"; a provision was added which dealt with fillers or foreign and makeweight materials. As thus amended, the section passed into the printed Code of 1907 as section 45, this because the act adopting the Code directed that all acts of the then session of the Legislature of general nature, enacted on or after July 9, 1907, should be incorporated into the Code to be thereafter printed and proclaimed. But these acts acquired no sanction by their presence in the Code.—*Montgomery v. Wyche,* 169 Ala. 181, 53 South. 786. However, the Code, after it had been printed, was adopted in its printed form by an act of August 26, 1909. By section 10 of the Code as adopted on the date last mentioned, with some specific exceptions not affecting the case at hand, all statutes of a public, general, and permanent nature, not included in the printed Code, were repealed. But it was not intended, of course, to repeal the many general laws of great importance to the state which had been enacted subse-

quent to the first adoption of the Code; and this reservation was expressed in section 2 of the act adopting the Code a second time, the effect of which was to save the act of November 22, 1907, along with all others in like case, notwithstanding its omission from the Code and the re-enactment of the repealing clause of section 10 thereof.—*Fulton v. State,* 171 Ala. 572, 54 South. 688. So, without overlooking the history of some of the provisions of the Code, or working any change in the statutes, but for convenience only, we have thus far stated the case as depending upon the statute law as shown by the printed Code. Our proposition as to the failure of the affidavit to state a criminal offense, if referred to the Code alone, is not denied, but has been stated in order to make clear the necessity, under which the prosecution labors, of finding support for its contention elsewhere. And so it does look elsewhere, and claims to find support in section 5 of the act of November 22, 1907, which was passed too late for reproduction in the printed Code, and which was unaffected by the second adoption of the Code in August, 1909.

With considerable elaboration, this act of November 22, 1907, goes over and amends the law which had theretofore been stated in sections 49 and 50 of the Code (constituting article 3 of the chapter given to Agriculture and Industries), where the analysis, tagging, and sale of cotton seed meal were regulated. The provision for the seller's tags is renewed; but there is no requirement of tax tags, no requirement that the state shall furnish or fix the price of tags, nor any indication of a change from the policy which the state had previously declared and observed of providing a character of regulations for fertilizers, which could be nothing but fertilizers, different from those provided for

cotton seed meal, which is of great use and value in widely different applications, unless all these things may be found in section 5, which reads: "That all cotton seed meal containing 7½ per cent. of ammonia which is sold for fertilizing purposes must be registered as other brands of fertilizers under the fertilizer law." We may remark that the policy and purpose of requiring that all cotton seed meal offered for sale shall be tagged or branded with the seller's tag or brand, so as to show its content of elements valuable for food, fertilizer, or other use, is not of difficult comprehension. But the utility in practice of special, additional, different provisions for cotton seed meal, when offered for sale as a fertilizer, seems not so clear. The ostensible purpose is to protect the farmer who buys cotton seed meal for use as a fertilizer. But farmers and others use cotton seed meal for other purposes. The manufacturer or dealer may always say, and say in good faith and without injuriously affecting his business: "I offer cotton seed meal for sale. I am required by the criminal laws of the state to guarantee its content of ammonia, and I do; but I am indifferent about the purpose for which it may be used. Buy it and do as you please with it." Nevertheless it may be within the power of the Legislature to provide a classification of cotton seed meal by reference to the common purpose in respect of its use buyer and seller may entertain at the moment of a sale, and to require manufacturers, jobbers, and manipulators to file the name of each brand, its guaranteed analysis, etc., with the Commissioner of Agriculture and Industries on or before the 1st day of December of each year—that is, to register their brands, as section 24 of the Code requires of manufacturers, jobbers, and manipulators of commercial fertilizers—just as it may be within that power to require

the registration by dealers of their brands of common lime, land plaster, common salt, or even ashes, all which are used in the combination of fertilizers; and it may be conceded that in section 5 of the act of November 22, 1907, it has so dealt with cotton seed meal. The language of the section requires that much. And it may be said that it would have been a foolish thing in lawmaking to require a registration of cotton seed meal with the Commissioner of Agriculture and Industries, as was required in the case of other fertilizers, without adding those other provisions of the statute which require fertilizers to be tagged with tax tags, and which would complete the system for the protection of agriculture, and incidentally for swelling the revenue of the state; and therefore it must be presumed that the Legislature intended to add the tax tag. But the court cannot, on its own notion of what the Legislature intended to do, or ought to have done, disassociated from the language employed, undertake to cure the inanities of the statute. "The plain and sound principle is to declare it a lex scripta est, although so understood the statute leads to absurd and mischievous results, or to consequences not contemplated by the Legislature; for courts are not to inquire as to the motive of the Legislature, nor to depart from a meaning clearly conveyed in unambiguous words, because the statute, as literally understood, appears to lead to unwise consequences, or to contravene a sound public policy."—26 Am. & Eng. Ency. p. 598; *Maxwell v. State*, 89 Ala. 150, 7 South. 824.

Section 5 seems out of place in the act. The act had prepared a system of regulations which applied, not only to cotton seed meal in general, but to cotton seed meal offered for sale as a fertilizer. It had enjoined the use of means by which the purchaser, for whatever

purpose, was informed of the content of ammonia and other chemicals. It had provided for offenders against its requirements punishment, the minimum of which exceeded the minimum of that provided for infractions of the "fertilizer law." That part of the Code which is referred to as the "fertilizer law" contained elaborate provision for the regulation of the sale of fertilizers other than common lime, land plaster, cotton seed meal, ashes, and common salt, not in combination. Section 6881 of the Criminal Code was one of them. To have provided for the importation of this law in a body into the statute of November, 1907, could only have introduced into the last named statute elements of confusion and contradiction of which it already had enough. It did not so provide. Its language required registration as other brands of fertilizers under the fertilizer law—nothing more. We have no right to extirpate this provision, because it may not seem to have been wisely conceived; nor, on the other hand, have we the right to extend or amend it. "It is better to abide this consequence than to put upon it a construction not warranted by the words of the act, and to give effect to what we may suppose to have been the intention of the Legislature."—*Rex v. Barham,* 8 B. & C. 99.

The construction for which the state contends must be avoided, in our opinion, for the additional reason that it would result in the constitutional invalidity of the enactment. Section 45 of the Constitution of 1901 provides that "no law shall be revived, amended or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length." In *State v. Rogers,* 107 Ala. 445, 19 South. 909, 32 L. R. A. 520, the court, speaking to this inhibition, quoted from a New York case, as fol-

lows: "It is not necessary, in order to avoid a conflict with this article of the Constitution, to re-enact general laws wherever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference, the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute; but the enforcement of the right or duty and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the state. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law." In the present case the state's contention would bring upon the manufacturers, sellers, and, therefore, the owners, of cotton seed meal, a common and valuable product of the idustry of the state, a tax, and the burdens of other civil and criminal statutes, of which the act says nothing, except in that sentence of it which makes applicable to cotton seed meal one specified provision of the "fertilizer law." Of a similar statutory provision this court in *Bay Shell Road Co. v. O'Donnell*, 87 Ala. 376, 6 South. 119, said: "It would be difficult to conceive a more effective method of defeating this important and salutary purpose than that adopted in this statute, by which the Legislature attempted to amend, extend, and confer the provisions of an intricate and important statute by a general reference to the subject-matter of that law, and to the book and page where it is published at length." This consideration is conclusive of the case. We have conceded the incorporation of the registration feature of the "fertilizer law" into the act, for its language im-

poses the burden of registration, leaving the method to be observed in the formal execution of the law to be ascertained by reference to the "fertilizer law." But our judgment is that settled rules of statutory interpretation, and the constitutional requirement of re-enactment at length in such cases, forbid any further extension to cotton seed meal of the burdens and duties imposed by the statute for the regulation of commercial fertilizers.

In our recent case of *Imperial Cotton Seed Oil Co. v. Shanks*, 177 Ala. 522, 58 South. 390, we held on considerations there stated, that neither section 28, which provides specifically for the tax tag, nor section 6881 of the Code, the section under which this affidavit was framed, require cotton seed meal, sold for fertilizing purposes to be tax-tagged; and that sales of such merchandise are not rendered void by failure to comply with those provisions of the statute.

Our conclusion is that the affidavit charged no offense, and that the plaintiff in error should be discharged. It will be so ordered.

Reversed and rendered. All the Justices concur, except DOWDELL, C. J., not sitting.