# *In re* State, *ex rel.* Attorney General.

## *Mandamus.*

(Decided June 29, 1912.　Rehearing denied December 17, 1912. 60 South. 285.)

1. *Intoxicating Liquors; Statutes; Validity.*—Acts　1909, p. 63, is a valid exercise of the power to enact laws for the seizure of property attempted to be used for an unlawful purpose or in an unlawful manner.

2. *Same; Search Warrant; Affidavits; Requisites.*—Acts 1909, page 63 requires the county solicitor, who files a bill to abate a liquor nuisance and for the issuance of a writ of seizure, to make the affi-

davit and verify the bill, and a verification by another is not sufficient.

3. *Same.*—Statutes authorizing searches and seizures confer extraordinary powers and harsh remedies, and must be strictly complied with and a search warrant can lawfully issue only in the cases and with the formalities prescribed by the statutes.

Original petition in the Supreme Court.

Mandamus by the state on the relation of the attorney general to compel the annuling of an order quashing a writ of seizure and restore the order directing the issuance and execution of a writ of seizure, directed to the judge of the Morgan Law & Equity Court. Writ denied.

ROBERT C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General and E. W. GODBEY, for petitioner. The statute authorizes the writ, whenever the judge is satisfied by the affidavit of any one that there is probable cause to believe there exists grounds for the issuance thereof.—Section 20, Acts 1909, p. 73; 53 Amer. Dec. 270; 47 Maine, 248; 6 W. & S. 480; 62 Pac. 686. An affidavit may be made by any person upon information and belief, even though the statute fails to sanction that mode of verification.—*Mitchell v. Pitts*, 61 Ala. 219; 15 South. 282; 28 L. Ed. 496; 18 Texas 446; 111 S. W. 430. The affidavit was sufficient.—14 N. W. 214; 17 B. Monroe 320; 6 Pac. 142; 57 N. Y. Supp. 213. From these authorities it follows that the court was in error in quashing the writ and in declining to reinstate the order and the writ.

WERT & LYNN, for appellee. No brief reached the Reporter.

MAYFIELD, J.—The state, on the relation of Samuel Blackwell, its solicitor for Morgan county, filed its bill under sections 19 et seq. of the "Fuller Bill"

(Acts. 1909, pp. 63-96), against Bud Cummings, to abate a liquor nuisance. On the filing of the bill a preliminary injunction issued, in accordance with the prayer thereof, and a writ of seizure issued, as provided for in section 20 of the Fuller Bill (Acts 1909, pp. 70, 71, and 72). Shortly after the issuance of the injunction and the writ of seizure, the defendant, Bud Cummings, by his attorneys, moved the court to quash the writ of seizure upon a number of assigned goods, averring that the bill was not properly verified, that it was filed on the relation of one Samuel Blackwell, as solicitor, and was not verified by him, but by one McCullough, a stranger to the proceedings, and who was not shown to be a citizen of the county of Morgan; that the bill did not sufficiently allege that Blackwell was a solicitor or authorized to file the bill; that it was not shown that Blackwell, who filed the bill, was such officer and was unwilling to make the affidavit as required by section 19 of the act known as the Fuller Bill; that neither the bill nor the affidavit showed that the affiant was cognizant of the facts set forth in the bill, nor did they inform the court as to the source, character, or extent of the affiant's information.

It will be observed that the Fuller Act, so far as the issuance of the injunction to abate the liquor nuisance is concerned, authorizes the bill to be verified by the person or officer filing the same; and provides that in case it is filed by one of the officers authorized to file it, and such officer is unwilling to verify it by his affidavit, the affidavit or verification of the bill may be made by any citizen, in the same manner as if the bill had been filed by him.

The language as to the injunction to abate the nuisance is as follows: "The bill or petition shall state the facts upon which the application is based and shall

be·verified by the affidavit of the officer or citizen filing the suit either upon knowledge, or information and belief, as the circumstances may warrant, and in case the bill is filed by any one of the officers named and he be unwilling to make the affidavit, the verification may be made by any citizen or citizens in the same manner and terms as if the bill had been filed by him or them."
—Acts 1909, p. 71.

However, if the bill also prays for a writ of seizure in aid of the injunction, the statute contains different provisions as to the affidavit or verification necessary to support the writ of seizure. As to this, the statute is as follows: "If the bill shall pray for a writ of seizure authorizing the sheriff to seize all prohibited liquors and beverages on the premises, together with all signs, screens, bars, bottles, glasses, and other movable property used in keeping and maintaining said nuisance, the officer, or citizen, or citizens, filing the bill may at the time they apply for a preliminary injunction make application to the judge who grants the fiat, or to the judge or chancellor of the court in which the bill is, or is to be, filed, or they may at any time pending the hearing make such application, to said judge or chancellor for such writ of seizure, and said writ may be ordered to issue when probable cause is shown, supported by oath or affirmation, for the issuance of said writ, and that the officer or person making the application or filing the bill has probable cause to believe, and does believe, that said prohibited liquors and beverages are manufactured, sold, furnished, given away, kept or offered for sale in violation of law on or about said premises, and the said officer, or citizen, making the application may support the same by the production of witnesses whose depositions may be taken in writing and be sworn to and subscribed by the persons making

them, and the judge may order said writ of seizure when he is satisfied from the affidavit of the officer or citizen, or the depositions of witnesses, one or both, that facts have been produced affording probable cause for believing the grounds of the application to exist. Such writ shall name or describe the person or other party whose premises are to be searched, and shall describe as near as may be the liquors or beverages that are to be seized, and the place where said liquors and beverages are to be seized as hereinafter prescribed for other search warrants."—Acts 1909, pp. 72, 73.

It is certain that, as to the issue of the writ of seizure, the statute requires the oath or affidavit of the person making the application or filing the bill, that he "has probable cause for believing and does believe" that the averments of the bill are true. This affidavit or verification of the person or officer filing the bill is made a sine qua non to the issuance of the writ of seizure.

On the motion to quash the writ of seizure, the original bill was amended so as to show that Blackwell, the relator, was solicitor for Morgan county, and authorized to file the bill, and that he had declined to verify the bill; which, under the statute, authorized it to be verified by the affidavit of another citizen (McCullough); but the bill was not then verified by the relator, but as amended was verified only by McCullough, as the original relator.

The trial court, on the hearing, granted the respondent's motion and quashed the writ of seizure. Thereupon the state, through the relator, applied to this court for mandamus to compel the judge so quashing the writ of seizure to set aside and annul the order so vacating the writ, and to restore his first order directing the issue and execution of such writ.

[In re State, ex rel. Attorney General.]

The rule nisi having issued to the judge to show cause, he filed his answer. That answer, justifying the court's action, is in part as follows: "That the order for the writ of seizure, together with said writ issued thereunder, were improper and void for the following reasons: (1) Probable cause therefor was not shown supported by oath or affirmation for the issuance of said writ by the officer making the application therefor and who filed the bill, to wit, Samuel Blackwell. (2) Because the officer making the application and filing the bill did not support the same by his oath or affirmation showing that he has probable cause to believe and did believe that said prohibited liquors and beverages were manufactured, sold, furnished, given away, kept, or offered for sale in violation of law on or about said premises. (3) There was nothing before the court to show that the officer making the application for the writ of seizure and who filed the bill had probable cause to believe and did believe that said Cummings was maintaining a liquor nuisance. (4) Because the officer making the application and filing the bill was not examined on oath, nor was his deposition taken in writing and subscribed by him."

The constitutionality of the provisions of the Fuller Liquor Bill," as to abatement of liquor nuisances, and the issuance of the writ of seizure in aid thereof, was fully discussed in the case of *Fulton v. State,* 171 Ala. 572, 54 South. 688; their validity being there upheld.

The law upon this subject has been well stated by the Supreme Court of Maine, in the case of *Gray v. Kimball,* 42 Me. 299- 307; it being quoted by Mr. Black (Intox. Liq. § 52) as follows: "Certain articles, which are treated as property while used for lawful purposes, may be subjects of forfeiture and destruction, under proper statutory provisions, if their use is deemed per-

nicious to the best interests of the community. And when such articles are attempted to be used for unlawful purposes, or in an unlawful manner, and the attempts are so concealed that ordinary diligence fails to make such discovery as to enable the law to declare the forfeiture, statutes authorizing searches and seizures have been held legitimate. The exercise of this power must be properly guarded, that abuses may be prevented, and that a citizen shall not be deprived of his property without having an accusation against him setting out the nature and charge thereof, and but by the judgment of his peers or the law of the land; and he shall be secure in his person, houses, papers, and possessions from unreasonable searches and seizures. It is not perceived that the statute under which the suit in this case is attempted to be defended violates any of the provisions of the Constitution which have been adverted to."

The Supreme Court of the United States, in the case of *Mugler v. Kansas,* 123 U. S. 671, 672, 678, 8 Sup. Ct. 302, 303, 306, 31 L. Ed. 205, said: "We are unable to perceive anything in these regulations inconsistent with the constitutional guaranties of liberty and property. The state having authority to prohibit the manufacture and sale of intoxicating liquors for other than medicinal, scientific, and mechanical purposes, we do not doubt her power to declare that any place, kept and maintained for the illegal manufacture and sale of such liquors, shall be deemed a common nuisance, and be abated, and, at the same time, to provide for the indictment and trial of the offender. One is a proceeding against the property used for forbidden purposes, while the other is for the punishment of the offender. * * * Mr. Justice Story says: 'The jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth.

[In re State, ex rel. Attorney General.]

The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property.  *  *  * In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.'—2 Story's Eq. §§ 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. They can, not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas, courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury.  *  *  * It has heretofore been supposed to be an established principle that, where there is a power to abate a nuisance, the abatement must be limited by its necessity, and no wanton or unnecessary injury can be committed to the property or rights of individuals. Thus, if the nuisance consists in the use to which a building is put, the remedy is to stop such use, not to tear down or to demolish the building itself, or to destroy property found within it.—*Babcock v. City of Buffalo,* 56 N. Y. 268; *Chenango Bridge Co. v. Paige,* 83 N. Y. 178, 189 [38 Am. Rep. 407]."

The Judges of the Supreme Court of the United States, in the famous case of *Boyd v. U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, spoke as follows upon

the law as to searches and seizures; Bradley, J., delivering the opinion: "The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ toto cœlo. In the one case, the government is entitled to the possession of the property; in the other, it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government."

The same learned court, in the same case, speaking of the caution that courts should exercise to see that the statutes and procedure as to searches and seizures should not be extended too far, said: "Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and affects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficiency, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is

the duty of courts to be watchful of the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis. We have no doubt that the legislative body is actuated by the same motives; but the vast accumulation of public business brought before it sometimes prevents it, on a first presentation, from noticing objections which become developed by time and the practical application of the objectionable law. * * * The fourth amendment says: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.' The things here forbidden are two—search and seizure. And not all searches nor all seizures are forbidden, but only those that are unreasonable. Reasonable searches, therefore, may be allowed, and, if the thing sought be found, it may be seized. * * * While the framers of the Constitution had their attention drawn, no doubt, to the abuse of this power of searching private houses and seizing private papers, as practiced in England, it is obvious that they only intended to restrain the abuse, while they did not abolish the power. Hence it is only *unreasonable* searches and seizures that are forbidden, and the means of securing this protection was by abolishing searches under warrants, which were searches in any place, for anything. This was forbidden, while searches founded on affidavits, and made under warrants which described the things to be searched for, the person and place to be searched, are still permitted."—116 U. S. pages 635, 640, 641, 6 Sup. Ct. pages 535, 538, 29 L. Ed. 746.

[In re State, ex rel. Attorney General.]

The general statutes of this state as to issuing search and seizure warrants provide that warrants may be issued upon the following grounds: Where the property was stolen or embezzled; where used as the means of committing a felony; where in possession of a person intending to use it in committing a public offense, or in the possession of another to conceal or prevent discovery. It can only be issued on probable cause, supported by affidavit, naming or describing the person, the property, and the place to be searched.—Code, §§ 7758, 7759; 6 Mayf. Dig. p. 821.

It is a misdemeanor to swear out a search warrant without probable cause. Before issuing warrants, magistrates should examine the complainant and witnesses, and take their depositions, which must be subscribed by the persons making them, and must set forth facts tending to establish the grounds of the application, or probable cause for believing they exist. The Code, § 7762, provides a form for search warrants. They should be executed only by the officers to whom they are directed, and in the daytime, unless the affidavit states positively that the property is on the person or in the place to be searched.—6 Mayf. Dig. p. 821.

The special statute authorizing the issuance and execution of such warrants has been heretofore referred to and quoted from. It will be observed that the special statute requires that the person or officer making the application or filing the bill shall make affidavit, and shall have probable cause to believe, and must believe, that the prohibited liquors are kept or offered for sale, in violation of law. The requirements of the statute as to the issuance of the writ of seizure are different from the requirement of that as to the issuing of the injunction or merely abating the nuisance. In the latter case the statute provides that the party or officer complain-

ing or filing the bill shall make the affidavit, and further provides that, if such officer is unwilling so to do, the bill may then be verified, or the affidavit made, by another citizen; but, if a writ of seizure is desired, it is required that the affidavit shall be made by the party complaining or filing the bill, for in such case it is not authorized that, if the complainant or relator declines to make the affidavit, it may be made by a citizen, as is authorized in the case of injunction merely.

We are not at liberty to extend, expand, or enlarge the statute, nor to read into this provision the alternative that the Legislature put in the provision as to the injunction.

As has been often said by this court and by the Supreme Court of the United States, these statutes create or confer extraordinary and harsh remedies, and the Constitutions, state and federal, have placed restrictions and limitations upon the Legislature touching the authorization of such process; and this is a strong reason why the provisions of the statute, though valid, should be complied with, so that the courts may not, by construction, effect that which the Constitution has inhibited the lawmaking power from doing.

"This warrant was unknown to the early common law, and came into use almost unnoticed in the troublous times of English history, Lord Coke denied its legality, but finally the courts and Parliament, recognizing its great efficiency, contented themselves with carefully restricting and controlling its use. In the United States the danger of the abuse of search warrants has been so clearly apprehended that constitutional barriers have been erected against them; and, while statutes relating to the subject of searches and seizures generally or in connection with particular subjects usually control, they are made and construed with

reference to the provisions of the state and federal Constitutions which render the people secure in their persons, houses, papers, and possessions, from unusual searches and seizures."—19 Ency. Pl. & Pr. p. 324.

"In *Robinson v. Richardson,* 13 Gray (Mass.) 454, the court, by Merrick, J., said: "Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings, or for the maintenance of any mere private rights; but their use was confined to cases of public prosecutions, instituted and pursued for the suppression of crime or the detection and punishment of criminals. Even in those cases, if we may rely on the authority of Lord Coke, their legality was formerly doubted; and Lord Camden said that they crept into the law by imperceptible practice. But their legality has long been considered to be established, on the ground of public necessity, because without them felons and other malefactors would escape detection.' "--19 Ency. Pl. & Pr. p. 324, note.

"No search warrant can lawfully be issued except in the cases and with the formalities prescribed by law. The principle that the forfeiture of property can be authorized only when all the formalities of the law are complied with in the search, seizure, and forfeiture proceedings, is generally recognized and adhered to."— 19 Ency. Pl. & Pr. p. 325.

For the failure of the complainant or relator to comply with the statute authorizing the writ of seizure, by making the affidavit and. verifying the bill, the trial court properly quashed the writ of seizure theretofore improperly issued, and we will not award the mandamus as prayed.

Mandamus denied.

ANDERSON, SAYRE, and SOMERVILLE, JJ., concur in opinion and conclusion. DOWELL, C. J., and SIMPSON and McCLELLAN, JJ., concur in conclusion only, upon the ground that mandamus will not lie, in the given case, to direct judicial discretion.